**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

A.F. MOORE & ASSOCIATES, INC.;　　　)
J. EMIL ANDERSON & SON, INC.;　　　)
ERLING EIDE; FOX VALLEY/RIVER　　　)　　　No. 1:18-cv-04888
OAKS PARTNERSHIP; SIMON　　　　　)
PROPERTY GROUP (DELAWARE),　　　)　　　Judge John J. Tharp, Jr.
INC.,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
MARIA PAPPAS, Cook County　　　　)
Treasurer and Ex Officio County　　　)
Collector; FRITZ KAEGI, Cook County　)
Assessor; COUNTY OF COOK,　　　　)
　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

**<u>MEMORANDUM OPINION AND ORDER</u>**

Cook County has a duty to tax similarly situated properties at similar rates. But for years, according to the plaintiffs in this action, the Cook County Assessor helped the County breach that duty by knowingly undervaluing many, but not all, properties. These undervaluations, from which the plaintiffs did not benefit, allegedly led the plaintiffs to shoulder disproportionately high tax burdens.

The plaintiffs filed the instant suit in July 2018, claiming that the Assessor's scheme violated (1) state and federal equal protection, and (2) a tax-specific provision of the Illinois Constitution.[1] *See* U.S. Const. amend. XIV, § 1; Ill. Const. art. I, § 2; *id.* art. IX, § 4(b). They also claimed that, in violation of state and federal due process, certain Illinois laws "arbitrarily and

---

[1] Fritz Kaegi, the current Assessor, was automatically substituted as a defendant pursuant to Fed. R. Civ. P. 25(d) on December 3, 2018. None of the allegations concerning the conduct of the Assessor relate to Mr. Kaegi's tenure.

irrationally" burdened their right to recover from the Assessor's malfeasance. Third Am. Compl. 25, 27 ¶¶ 75, 85, ECF No. 378; *see* U.S. Const. amend. XIV, § 1; Ill. Const. art. I, § 2. July 2018, however, was not the first time the plaintiffs asserted these claims. In fact, the plaintiffs began pressing the claims in 2005, when Erling Eide filed an objection to his 2004 taxes in the Circuit Court of Cook County. By 2010, all of the plaintiffs had filed similar objections in state court; the last such objection was filed in January 2016.

Given the plaintiffs' 2005 to January 2016 objections, the defendants now move to dismiss the third amended complaint on statute-of-limitations grounds. The plaintiffs, meanwhile, move for summary judgment on the statute-of-limitations issue, seeking a declaration that their claims are timely. For the reasons that follow, the defendants' motions to dismiss are denied, and the plaintiffs' motion for partial summary judgment is granted.

## I.    BACKGROUND[2]

This case has a long history, and recounting all of it in detail would be a taxing endeavor indeed. As such, the Court provides only the background necessary to resolve the pending motions.

### A.    The Alleged Scheme

In Cook County, property tax "is calculated [based on] the estimated value of the property in question." Third Am. Compl. 7 ¶ 15. More specifically, the County taxes property based on its estimated value and the class of property to which it belongs (small residential, commercial, industrial, and so on). *See* Cook County, Ill., Code of Ordinances § 74-63 (listing classes). By County ordinance, the Assessor is responsible for (1) estimating the market value for each

---

[2] For purposes of the motions to dismiss, the Court accepts the factual allegations in the third amended complaint as true. *Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). For purposes of the motion for partial summary judgment, the facts here are undisputed unless otherwise noted.

property, and (2) taxing the property at a class-dependent percentage of that value. *Id.* § 74-64; *see* Third Am. Compl. 8 ¶¶ 20-21 (listing assessment percentages from the year 2000 onward).

In theory, this system ensures that properties in the same class with the same market value are taxed at the same rate. In practice, the plaintiffs say, things looked quite different. As alleged in the third amended complaint,[3] the Assessor "systematically undervalued" properties from 2000 to 2008 and in "certain tax years" from 2009 to 2014. Third Am. Compl. 9-10 ¶¶ 25-26. That behavior resulted in lower effective tax rates for those properties,[4] with the general public none the wiser.[5] *See, e.g.*, *id.* at 11 ¶ 30 ("The assessor put the fictitious market values on county records available to the public to make it appear that [certain] assessments were based on the [higher] *de jure* level. In reality, the assessments were based on the [lower] *de facto* level, which was [a smaller percentage] of . . . actual market value.").

The plaintiffs—individual and corporate owners of real estate in Cook County—were not the beneficiaries of this alleged scheme.[6] Instead, they claim, they "were among [the] minority of

---

[3] The defendants presumably dispute the substance of these allegations, but they do not (and cannot) dispute their existence. To the extent the plaintiffs' Rule 56.1 statement speaks to the Assessor's conduct, the defendants object to the facts asserted as "irrelevant, being of no consequence to the question of timeliness of Plaintiffs' claims." *See, e.g.*, Assessor Resp. to Pls.' Rule 56.1 Statement 1-3 ¶ 2(a)-(c), ECF No. 414; Treasurer & Cnty. Resp. to Pls.' Rule 56.1 Statement 1-3 ¶ 2(a)-(c), ECF No. 416.

[4] Consider two single-family residential properties, both worth $100,000. Because these properties fall into the same class (small residential), the owners of both should be taxed $10,000 (10% of $100,000). *See* Cook County, Ill., Code of Ordinances § 74-63(2). But now assume that one property is intentionally undervalued; perhaps the Assessor purposely lists its value at $50,000, not $100,000. That property would be taxed only $5,000 (10% of $50,00), making the owner's effective tax rate 5% of the true $100,000 valuation.

[5] In the example just provided, it appears that both properties are being taxed at 10% of their fair market values ($100,000 and $50,000, respectively). In reality, though, one property is being taxed at 5% of its fair market value.

[6] Two of the original plaintiffs (the American Academy of Orthopaedic Surgeons and Prime Group Realty Trust) dismissed their claims with prejudice and do not appear in the third amended complaint.

property owners" whose land was assessed at the proper value. *Id.* at 2 ¶ 3. And as a result, they "paid tens of millions of dollars more in property taxes during the relevant period than they would have if they were assessed at the lower rates imposed on most Cook County property owners." *Id.* Unhappy with this perceived state of affairs, the plaintiffs began to challenge their tax assessments in the Circuit Court of Cook County. *See id.* at 4-5 ¶ 10 (noting that each plaintiff "exhausted available administrative remedies and perfected its right to seek judicial review . . . pursuant to the Illinois Property Tax Code"); 35 Ill. Comp. Stat. 200/23-10, 23-15 (describing the procedures for tax objections).

### B. State Court Objections

Beginning in 2005 and ending in 2016, the plaintiffs filed a series of tax objections in state court.[7] The following table lists the tax objections filed by each plaintiff:

| Plaintiff | Tax Year | Date Filed |
|---|---|---|
| A.F. Moore & Associates, Inc. | 2008 | May 5, 2010 |
| J. Emil Anderson & Son, Inc. | 2007 | April 7, 2009 |
| | 2008 | May 5, 2010 |
| Erling Eide | 2004 | December 20, 2005 |
| | 2005 | January 30, 2007 |
| | 2006 | May 1, 2008 |
| | 2007 | April 7, 2009 |
| | 2008 | May 5, 2010 |
| Fox Valley/River Oaks Partnership; Simon Property Group (Delaware), Inc. | 2005 | January 30, 2007 |
| | 2006 | May 1, 2008 |
| | 2008 | May 5, 2010 |
| | 2009 | May 20, 2011 |
| | 2010 | April 1, 2012 |
| | 2011 | December 20, 2012 |
| | 2012 | December 30, 2013 |
| | 2014 | January 12, 2016 |

---

[7] The Court can take judicial notice of the plaintiffs' objections, along with other matters of public record, without converting the defendants' motions to dismiss into motions for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

*See* Assessor Resp. to Pls.' Rule 56.1 Statement ("Assessor Resp.") 4-5 ¶ 4, ECF No. 414; Treasurer & Cnty. Resp. to Pls.' Rule 56.1 Statement ("Treasurer Resp.") 5 ¶ 4, ECF No. 416; Assessor Mot. to Dismiss ("Assessor MTD") 4-5, ECF No. 386. Erling Eide filed the first objection on December 20, 2005; Fox Valley/River Oaks Partnership and Simon Property Group (Delaware), Inc., filed the final objection on January 12, 2016. By May 5, 2010, the date on which A.F. Moore & Associates, Inc., filed its first and only objection, all plaintiffs had filed at least one objection in state court.

Each objection sought declaratory relief and a tax refund based on claims that the Assessor violated (1) the Equal Protection Clause of the Fourteenth Amendment, which "entitles owners of similarly situated property to roughly equal tax treatment," and (2) the Illinois Constitution, which guarantees that taxes "shall be uniform within each class" of property and prohibits certain assessment disparities. *A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889, 890 (7th Cir. 2020) (citing *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n*, 488 U.S. 336, 345-46 (1989)); Ill. Const. art. IX, § 4(b); *see* Assessor Resp. 4 ¶ 3; Treasurer Resp. 4-5 ¶ 3; Pls.' Resp. to Treasurer & Cnty. Rule 56.1 Statement ("Pls.' Resp.") 1-2, 6-7 ¶¶ 1, 7(a), ECF No. 423. Each objection also contained a count (1) alleging an equal-protection violation pursuant to 42 U.S.C. § 1983, and (2) seeking declaratory and injunctive relief under that statute. Assessor Resp. 5-6 ¶¶ 5-6; Treasurer Resp. 6 ¶¶ 5-6.

The plaintiffs' § 1983 claims warrant additional discussion. "When a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983," state courts "must refrain from granting [that] relief . . . when there is an adequate legal remedy." *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 592 (1995). Because a tax refund is one such adequate remedy, *see id.* at 589, the plaintiffs asserted their § 1983 claims "in the alternative" and only "in

the event that [their other claims were] held not to be actionable" under Illinois law, *e.g.*, Assessor

MTD Ex. 1 ("A.F. Moore Obj.") at 13-14 ¶ 35, ECF No. 386-1. State courts could so hold, the

plaintiffs reasoned, because (1) their claims required "review of the techniques, methodologies,

procedures, or intent of assessing officials," and (2) Illinois law prevented them from naming the

Assessor as a defendant or inquiring into his motives and methods. *Id.* at 14 ¶ 36; *see* 35 Ill. Comp.

Stat. 200/23-15(a) ("The complaint shall name the county collector as defendant . . . ."); *id.* 200/23-

15(b)(3) ("If an objection is made claiming incorrect valuation, the court shall consider the

objection without regard to the correctness of any practice, procedure, or method of valuation

followed by the assessor . . . and without regard to the intent or motivation of any assessing

official.").[8] Put differently, the plaintiffs used § 1983 to cover the (evidently foreseeable) scenario

in which Illinois tax procedure prevented their other claims from moving forward.

### C.     State Court Proceedings

Erline Eide filed his first tax objection nearly 20 years ago, so it is perhaps unsurprising

that the plaintiffs' objections have complicated procedural histories. *See, e.g.*, Treasurer & Cnty.

Mot. to Dismiss ("Treasurer MTD") 2-9, ECF No. 387 (recounting the major events in state court).

The Court here describes two sets of events relevant to the questions at hand.

#### 1.     Woodfield Claims

In 2009, the Cook County Treasurer moved to dismiss an objection filed by Woodfield

Realty Holding Company, LLC, for tax year 2003.[9] While Woodfield is a nonparty to this suit, its

---

[8] Although 35 Ill. Comp. Stat. 200/23-15(a) does not explicitly state that only the county collector may be named as a defendant, Illinois trial and appellate courts have construed the provision's language in this way. *See* Assessor Resp. 5-6 ¶ 5; Treasurer Resp. 6 ¶ 5.

[9] The Cook County Treasurer serves as the Cook County Collector. Under Illinois law, the Collector (and only the Collector) is the proper defendant in a state tax case. 35 Ill. Comp. Stat. 200/23-15(a). Woodfield's 2003 objection raised the same legal issues as the plaintiffs' objections. *See* Treasurer MTD Ex. 24 at 1, 3, ECF No. 387-24.

2004 and 2005 objections were eventually consolidated with the plaintiffs' objections, and "the Woodfield case served as a representative case" for the parties here. *Id.* at 4; *see* Pls.' Rule 56.1 Statement ("Pls.' Statement") 6 ¶ 7 n.1, ECF No. 406-1. The Treasurer sought dismissal of Woodfield's claims for two relevant reasons. First, the Treasurer argued, Woodfield's § 1983 claims should be dismissed because the company could obtain legal relief in the form of a tax refund. *See* Treasurer MTD Ex. 24 ("Woodfield Mot.") at 4-9, ECF No. 387-24; *Nat'l Priv. Truck*, 515 U.S. at 589, 592. Second, Woodfield's equal-protection and state constitutional claims (the "constitutional claims") should be dismissed because Woodfield failed to exhaust those claims before the relevant administrative body, the Board of Review. *See* Woodfield Mot. 17-21.

At a hearing on the motion in January 2010, Woodfield's attorneys argued against dismissal of the § 1983 and constitutional claims.[10] Pls.' Resp. 4-5 ¶ 4. As to the latter, counsel made the following statement: "[W]e have hundreds of times, if not thousands, raised constitutional questions like [the ones presented here] . . . before the Board of Review and have been [made] to understand very clearly by the Board of Review that they have no interest in those claims at all." Treasurer MTD Ex. 2 at 109:11-16, ECF No. 387-2; *see* Pls.' Resp. 5 ¶ 5. Notwithstanding any disinterest of the Board in hearing such claims, the circuit court granted the Treasurer's motion in part, finding that (1) Woodfield had failed to exhaust its constitutional claims, and (2) Woodfield's ability to obtain a refund based on those claims barred its § 1983 claims in any event. Treasurer MTD Ex. 1 at 19, 21-27, 35, ECF No. 387-1.

The circuit court eventually granted similar motions to dismiss Woodfield's 2004 and 2005 tax objections, although it dismissed only the § 1983 claims because Woodfield had properly

---

[10] The same law firm that represented Woodfield represented, and still represents, the plaintiffs. Treasurer MTD 4.

exhausted its constitutional claims for those years.[11] Pls.' Statement Ex. 10 at 32, 53-56, ECF No. 406-3; Pls.' Resp. 5-6 ¶ 6. On June 27, 2012, about a year after dismissing Woodfield's second set of § 1983 claims, the circuit court entered an order consolidating Woodfield's 2004 and 2005 objections with the objections the plaintiffs had filed before that date. Pls.' Statement Ex. 11 at 1-3, ECF No. 406-3.

## 2. Subpoenas

Also in 2009, Woodfield served a set of subpoenas on the Assessor. Assessor Resp. 7 ¶ 8; Treasurer Resp. 7 ¶ 8. After extensive motions practice, during which time the subpoenas were stayed, the presiding judge allowed for enforcement of the subpoenas in 2014. *See* Assessor Resp. 7-8 ¶¶ 9-13; Treasurer Resp. 7-8 ¶¶ 9-13. Through the execution of these, and additional, subpoenas, the plaintiffs discovered what they believed to be destruction of evidence by the Assessor.[12] Pls.' Statement 7-8 ¶¶ 14-17; Mot. to Dismiss Resp. ("MTD Resp.") 14, ECF No. 396 ("The Plaintiffs only first learned about the Assessor's . . . misconduct in late 2014 and early 2015, when the state court finally compelled the Assessor to begin complying with the Plaintiffs' subpoenas."); *see also* Third Am. Compl. 17-18 ¶¶ 51-52 (alleging intentional spoliation). Consistent with that belief, the plaintiffs moved for sanctions and a spoliation instruction in September 2016. Assessor Resp. 11 ¶ 23; Treasurer Resp. 12 ¶ 23. In the alternative, the plaintiffs asked the state court to revive Woodfield's § 1983 claims, arguing that "the denial of a remedy for evidence spoliation . . . would render the tax-objection complaint procedure an inadequate

---

[11] The record does not reflect whether the Board addressed the substance of the constitutional claims; proceedings of the Board are not transcribed or recorded. Pls.' Statement Ex. 10 at 31, ECF No. 406-3.

[12] Here, too, the defendants object to the asserted facts as "irrelevant . . . to the question of the timeliness of Plaintiffs' claims." Assessor Resp. 8-11 ¶¶ 14-22; Treasurer Resp. 9-12 ¶¶ 14-22; *see supra* note 3. Although immaterial to the analysis below, the defendants dispute at least some of the facts regarding spoliation. *See, e.g.*, Treasurer Resp. 11 ¶ 21.

remedy . . . for vindicating their federal constitutional rights." Assessor Resp. 11 ¶ 24; Treasurer Resp. 12 ¶ 24; *see* Pls.' Statement Ex. 12 ("Spoliation Op.") at 70, ECF No. 406-4.

On February 16, 2018, the circuit court concluded that "although the Assessor . . . intentionally destroy[ed] documents," it "could not impose [all of] the sanctions" the plaintiffs sought. MTD Resp. 8; *see* Spoliation Op. 42-43. The Assessor was not (and could not be) a defendant, the court wrote, and so contrary to the plaintiffs' position, the mere filing of a tax objection did not trigger the Assessor's duty to preserve evidence. The court did order spoliation instructions for certain claims, finding that the 2009 Woodfield subpoenas triggered a limited duty to preserve. Spoliation Op. 68-71, 73. But it declined to grant the plaintiffs their desired relief for all claims and tax years at issue, and it further declined to revisit its earlier § 1983 rulings. As to the second, the court held that failing to subpoena the Assessor (and thus trigger the duty to preserve) immediately after filing a tax objection did "not render Illinois law generally, and the Property Tax Code procedure . . . specifically, an inadequate remedy at law to vindicate federal constitutional rights." *Id.* at 70-71. It was at this moment, the plaintiffs contend—the moment it became clear they could not obtain a necessary (given the destruction of evidence) spoliation instruction for all claims—that they "first learned . . . they would not receive an adequate remedy at law . . . in state court." MTD Resp. 8; *see also* Treasurer MTD Ex. 40 at 19:13-15, ECF No. 387-40 (arguing that a complete remedy "cannot tolerate impunity in the destruction of evidence").

### D.    The Instant Suit

The plaintiffs filed the instant suit on July 17, 2018, just five months after the circuit court's February 2018 decision. Pls.' Resp. 9 ¶ 10. To understand why the plaintiffs waited until July 2018 to file their federal case, it is important to understand the contours of the Tax Injunction Act. That

Act, which prohibits district courts from enjoining, suspending, or restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," 28 U.S.C. § 1341, essentially "strips federal district courts of jurisdiction over challenges to state and local taxes as long as the taxpayer has an adequate forum in state court to raise all constitutional claims," *A.F. Moore*, 948 F.3d at 891. According to the plaintiffs, the February 2018 decision revealed not only that they "would not receive an adequate remedy at law" in Cook County, but also that state court would not provide "a plain, speedy, and efficient remedy" for their claims.[13] MTD Resp. 8. In the plaintiffs' view, the latter defect rendered the state forum inadequate and their "challenges to . . . local taxes" appropriate for federal adjudication. *A.F. Moore*, 948 F.3d at 891; *cf. Capra v. Cook Cnty. Bd. of Rev.*, 733 F.3d 705, 717 (7th Cir. 2013) (district courts "were required to abstain from considering the merits" of a § 1983 claim because an allegation "that facially adequate procedures will not function adequately in the future is premature").

The plaintiffs' complaint alleged violations of (1) the Equal Protection and Due Process Clauses, (2) the Illinois Constitution's equal protection and due process clauses, (3) the Illinois Constitution's uniformity and anti-disparity provisions, and (4) the Illinois tax code. Compl. 30-41 ¶¶ 69-96, ECF No. 1; *see* U.S. Const. amend. XIV, § 1; Ill. Const. art. I, § 2; *id.* art. IX, § 4(b); 35 Ill. Comp. Stat. 200/23-15. The complaint, in other words, asserted (1) the same equal-protection, uniformity, and anti-disparity claims found in the state court objections, and (2) the

---

[13] The court, that is, would neither (1) provide an adequate remedy at law, which required a spoliation instruction for all claims, nor (2) revive Woodfield's § 1983 claims, the only other way to obtain relief on the claims for which a spoliation instruction was not allowed. As described below, the Seventh Circuit found the state court's remedy insufficient on different grounds.

due-process claims anticipated by those objections.[14] Consistent with these allegations, the plaintiffs sought a declaration that (1) their taxes were unlawfully assessed, (2) they are entitled to a refund, and (3) certain provisions of 35 Ill. Comp. Stat. 200/23-15 are unconstitutional. Compl. 31, 33-34, 36, 38-40. They also sought attorney's fees, an order enjoining the enforcement of the foregoing provisions, and an order directing the Collector to refund their tax payments. *Id.* at 31, 33-34, 36-38, 40-41.

The defendants—the Assessor, the Treasurer/Collector, *see supra* note 9, and Cook County—moved to dismiss. The Tax Injunction Act deprived the Court of jurisdiction, they argued, because Illinois law already provided the plaintiffs with a "plain, speedy and efficient remedy . . . in the courts" of Illinois. 28 U.S.C. § 1341; *A.F. Moore & Assocs. v. Pappas*, 385 F. Supp. 3d 591, 597 (N.D. Ill. 2019), *rev'd*, 948 F.3d 889; *see Scott Air Force Base Props., LLC v. County of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008) ("[I]f the relief sought would diminish or encumber state tax revenue, then the [Tax Injunction] Act bars federal jurisdiction over claims seeking such relief. The [Act] strips the district courts of the power to hear suits seeking not only injunctive but also declaratory relief from state taxes." (citation omitted)).

Judge Kocoras, to whom this case was previously assigned, agreed. "For over two decades," he wrote, "the Seventh Circuit has [held] the Illinois tax objection procedures" adequate for purposes of the Tax Injunction Act. *A.F. Moore*, 385 F. Supp. 3d at 598. This case presented no reason to depart from the Seventh Circuit's prior holdings, especially because there was no "uncertainty as to whether the state court" would hear the plaintiffs' constitutional claims. *Id.*; *see id.* at 598-99 (explaining, based on "cue[s]" from the Seventh Circuit, why the procedures at issue

---

[14] Specifically the § 1983 counts, which the plaintiffs asserted only in the event that Illinois tax law limited or barred their recovery. *See supra* section I.B.

were plain, speedy, and efficient). Judge Kocoras accordingly granted the motion and dismissed for lack of jurisdiction.[15] Because he dismissed for lack of jurisdiction, Judge Kocoras did not weigh in on the defendants' other arguments for dismissal. *Id.* at 600. Relevant here, one such argument was that the plaintiffs' claims were "barred by the applicable statute of limitations." *Id.* at 597.

The Seventh Circuit reversed. In an opinion written by then-Judge Barrett, the court found this to be "the rare case" in which the Tax Injunction Act does not apply. *A.F. Moore*, 948 F.3d at 891. That is so, the court reasoned, because Illinois does not provide the plaintiffs "an adequate forum" for their federal equal-protection claims.[16] *Id.* In view of the defendants' admission that actions under 35 Ill. Comp. Stat. 200/23-15 concern only "whether the assessment of the real estate property [at issue] was correct," the court wrote the following:

> To avoid the Tax Injunction Act's jurisdictional bar, the taxpayers must demonstrate that section 23-15 denies them a complete hearing on any and all [federal] constitutional objections. Their particular constitutional objection is that the Assessor violated the Equal Protection Clause by valuing their properties correctly under the Cook County ordinance but cutting everyone else a break with a lower de facto rate. If section 23-15 limits taxpayers to challenging only the correctness of the valuation under Illinois law, then they have no state forum for that cognizable constitutional claim. What's more, a taxpayer attempting to prove . . . [a] claim under the Equal Protection Clause must demonstrate that there is no rational basis for the disparate tax treatment—a burden that generally requires engaging with the legitimacy of the policy's stated purpose. If section 23-15 prevents taxpayers from probing into the Assessor's methodology or intent, they will not be able to prove that his tax assessment violated the Equal Protection Clause.

---

[15] Judge Kocoras also found it "appropriate to decline jurisdiction over this matter on comity grounds." *A.F. Moore*, 385 F. Supp. 3d at 600. On appeal, the Seventh Circuit held that because the Tax Injunction Act did not "bar the . . . court from exercising jurisdiction over this challenge, neither [did] the principle of comity." *A.F. Moore*, 948 F.3d at 896.

[16] Recall that, in terms of federal law, the plaintiffs' tax objections contained only equal-protection claims (whether actionable under 35 Ill. Comp. Stat. 200/23-15 or § 1983). *See supra* section I.B. The federal due-process claims, while anticipated by the § 1983 counts, were asserted for the first time in this suit.

. . . .

. . . By the defendants' own admission, . . . the section 23-15 procedures provide no forum for the taxpayers to raise their constitutional claims. Nor have the defendants been able to point to any alternative channels in which these taxpayers can raise their federal constitutional claims in Illinois courts. . . . Since the defendants agree that the taxpayers cannot make their equal protection case in state court, the taxpayers have no "remedy" at all for their claims—never mind a "plain, speedy and efficient" one—and the Tax Injunction Act does not bar their federal suit.

*Id.* at 895-96 (cleaned up).[17] Put simply: While Illinois tax procedure might be adequate as a general matter, it is inadequate here. *See id.* at 894-95 (citing cases). The Tax Injunction Act therefore presents no barrier to the plaintiffs' federal suit.

Although the Seventh Circuit ultimately declined to consider the statute-of-limitations question (preserved below), that question was briefed and argued on appeal. *See, e.g.*, Brief of Defendants-Appellees at 34-48, *A.F. Moore*, 948 F.3d 889 (Nos. 19-1971 & 19-1979) (arguing that the court should alternatively affirm because the plaintiffs' claims are "barred under the appliable statute of limitations"). Of note, the following exchange occurred at oral argument:

[Counsel for the Assessor] Ms. Sperry: . . . [T]he Plaintiffs have been filing these tax objection suits questioning the valuation of their property since [the] 2004 tax year. So they've known about whatever the alleged equal protection violation or the disparity is since at least 2004. And the same is true with respect to the due process claims in . . . their complaint. And so based on the fact that . . . the statute of limitations begins to run . . . when the injury occurred, . . . even if . . . there were relief here, it would be time barred.

Judge Hamilton: You realize how Kafkaesque that sounds under these circumstances, right? Your . . . theory . . . and the county's theory is that a remedy is available in the state courts. And therefore [the plaintiffs] had to pursue that. They have been pursing that. And now that it seems reasonably clear that the state courts are not open at least sufficiently for purposes of federal constitutional

---

[17] Although the Seventh Circuit did not discuss the possibility of the state court reviving the plaintiffs' § 1983 claims given that 35 Ill. Comp. Stat. 200/23-15 offers no legal remedy, the same (inadequate) procedural rules would presumably govern those claims once revived. To the extent the Seventh Circuit and the Circuit Court of Cook County disagree on the adequacy of state procedures, *see supra* section I.C.1 (discussing the dismissal of Woodfield's § 1983 claims), the Court is bound by the Seventh Circuit's holding.

doctrine and comity, and . . . the [Tax Injunction Act], you're saying, oh, now—
now the time has passed. First you were too early and then you were too late. When
was the right time to bring these claims in federal court?

Pls.' Statement Ex. 15 at 29:22-31:2, ECF No. 406-5.

On remand from the Seventh Circuit, the plaintiffs amended their complaint several
times.[18] The defendants now move to dismiss the third amended complaint pursuant to Fed. R.
Civ. P. 12(b)(6), arguing that the plaintiffs' claims are time-barred.[19] The plaintiffs, in turn, move
for partial summary judgment on the statute-of-limitations issue.

## II.    DISCUSSION[20]

Despite the complex history above, there is only one legal question the Court must decide
today: Are the plaintiffs' claims barred by the relevant statute (or statutes) of limitations? If the
answer to that question is yes, the Court must grant the defendants' motions to dismiss. *See*
*Bland v. Edward D. Jones & Co.*, 375 F. Supp. 3d 962, 971 (N.D. Ill. 2019) ("Dismissal for failure
to state a claim under Rule 12(b)(6) is proper when the allegations in a complaint, however true,
could not raise a claim of entitlement to relief." (quotation marks omitted)). If the answer is no,
the plaintiffs are entitled to partial summary judgment. *See* Fed. R. Civ. P. 56(a) ("The court shall
grant summary judgment if the movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."). The parties' motions are

---

[18] Although Judge Kocoras initially stayed the case on remand pending resolution of a
petition for certiorari, the Seventh Circuit vacated that order via a writ of mandamus. *In re A.F.*
*Moore & Assocs.*, 974 F.3d 836, 838-42 (7th Cir. 2020) (per curiam).

[19] The third amended complaint alleges the same violations (and seeks the same relief) as
the initial complaint, although it omits the count regarding violations of the Illinois tax code. *See*
Third Am. Compl. 23-31 ¶¶ 66-98.

[20] Tax Injunction Act notwithstanding, *see supra* section I.D, the Court has jurisdiction
over the plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343. The Court has jurisdiction
over the plaintiffs' state law claims under 28 U.S.C. § 1367.

intertwined, and they assert nearly identical legal arguments. *See, e.g.*, Assessor Resp. to Mot. for Partial Summ. J. ("Assessor MSJ Resp.") 7 n.1, ECF No. 413 ("The Assessor incorporates his [prior motion-to-dismiss briefing] by reference as if fully set forth herein, as [it] address[es] the same arguments Plaintiffs raised in the instant Motion.").

The Court addresses two preliminary issues before answering. First, it is appropriate to consider the statute-of-limitations question at this stage. Regarding the defendants' motions, it is true that (1) the statute of limitations is an affirmative defense, and (2) complaints generally "do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But the statute of limitations is "properly raised in a motion to dismiss" where "the issue [can] be resolved . . . based on the allegations in the complaint and a few undisputable facts within [the Court's] judicial-notice power," and that is the case here.[21] *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); Third Am. Compl. 9-10, 19 ¶¶ 25-26, 56 (referencing dates and the plaintiffs' state court litigation); *supra* note 7 (judicial notice of objections and other matters of public record is appropriate). Regarding the plaintiffs' motion, Rule 56(a) specifically contemplates motions for partial summary judgment, and "[c]ourts in this district routinely entertain motions for partial summary judgment seeking the dismissal of affirmative defenses." Fed. R. Civ. P. 56(a); *Wildey v. Springs*, No. 92-cv-08146, 1993 WL 350195, at *1 (N.D. Ill. Sept. 7, 1993).

---

[21] Although the plaintiffs claim that "evidence identified in discovery or otherwise available" could be used to "establish that [the] complaint was timely filed," MTD Resp. 23-24, the record compiled by the parties (including state court history) provides enough detail to resolve the statute-of-limitations question as a matter of law. Indeed, given the analysis that follows, the Court cannot conceive of any new fact that "if proven would establish a defense to the statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

Second, the plaintiffs' motion for partial summary judgment is ripe for adjudication. The defendants argue that the motion is premature: There are no affirmative defenses on which to seek summary judgment, they say, because they "have not [yet] filed an answer or affirmative defenses to the third amended complaint." Treasurer & Cnty. Resp. to Mot. for Partial Summ. J. ("Treasurer MSJ Resp.") 4, ECF No. 415. That argument, however, misses the mark. True, the Seventh Circuit has written that an amended complaint "wipes away" all prior pleadings.[22] *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). And true, the defendants have not formally raised a statute-of-limitations defense in a new answer. *See* Fed. R. Civ. P. 8(c), 12(b). But Rule 56(a) only requires the moving party to identify "each claim or defense" on which summary judgment is sought; nothing in its language requires the claim or defense to have been formally raised.[23] *Id.* R. 56(a); *see, e.g.*, *McCoy v. Major League Baseball*, 911 F. Supp. 454, 455 (W.D. Wash. 1995) (ruling on a motion for "summary judgment as to . . . anticipated defenses" and a corresponding motion to dismiss filed by the defendants). And even if Rule 56(a) did contain such a requirement, principles of equity would bar the defendants from (1) raising a statute-of-limitations defense in their motions

---

[22] This language seems to foreclose the plaintiffs' argument that "when an amended complaint does not add new parties, new claims, or significant new factual allegations, the previously filed response to the original pleading" can stand in place of a new answer. *See KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 715 (9th Cir. 2020) (cleaned up). While the Seventh Circuit later clarified that "wipes away" does not require courts to "allow new affirmative defenses whenever a plaintiff files an amended complaint," it has not, to the Court's knowledge, addressed whether a new complaint that does "not change the theory or scope of the case" leaves previous defenses intact. *See Burton v. Ghosh*, 961 F.3d 960, 966-68 (7th Cir. 2020).

[23] While seeking summary judgment as to an unasserted defense might, in some circumstances, raise concerns about "issu[ing] an advisory opinion," those circumstances are not present here. Treasurer MSJ Resp. 4. The defendants have put the statute-of-limitations question "before the court" by raising it in their motions to dismiss, *Bright v. Wal-Mart Stores, Inc.*, No. 96-cv-50140, 1998 WL 160859, at *3 (N.D. Ill. Apr. 6, 1998), the question is far from "an abstract dispute about the law," *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

to dismiss, and then (2) arguing that such a defense is not yet in play for summary judgment purposes.[24]

With these issues resolved, the Court turns to the parties' substantive arguments.

## A.  Section 1983 Claims

The Court begins with the plaintiffs' federal claims, as dismissal of those claims would likely lead to dismissal of the plaintiffs' other claims as well. *See* 28 U.S.C. § 1367(c)(3). The plaintiffs assert their federal claims under § 1983, *see* Third Am. Compl. 23-26 ¶¶ 66-80, and "the appropriate statute of limitations for § 1983 cases filed in Illinois is two years," *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). This means that, absent some sort of tolling or estoppel, the plaintiffs' claims are time-barred if they began to accrue prior to July 17, 2016. *See supra* section I.D (instant suit filed July 17, 2018). Section 1983 claims begin to accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).

### 1.  Accrual

The natural question, then, is when the plaintiffs first knew (or should have known) that their equal-protection and due-process rights were violated. The Court's inquiry on this matter "proceeds in two steps." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). First, the Court "must identify the injury." *Id.* "Next, it must determine the date on which [each] plaintiff could have sued for that injury." *Id.* For clarity, the Court analyzes the plaintiffs' equal-protection and due-process claims separately.

---

[24] To put it another way, the defendants affirmatively chose to move for Rule 12(b)(6) dismissal rather than answering and moving for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). It would be inequitable to allow the defendants to benefit from their own procedural choices. It would also make little sense, from a judicial-economy standpoint, to deny the plaintiffs' motion as premature and then revisit it after denying the motions to dismiss.

*Equal Protection.* The third amended complaint alleges that the Assessor's scheme violated the Equal Protection Clause because (1) the plaintiffs' properties were assessed at higher rates than similarly situated properties, and (2) the plaintiffs paid higher taxes as a result. Third Am. Compl. 23 ¶¶ 67-68; *see supra* section I.A. Based on this description, the injury is fairly obvious: The plaintiffs received unequal tax treatment and paid more in taxes than those with properties of like value.

When could the plaintiffs have sued for that injury? Not until February 16, 2018, the plaintiffs say; that was the day the state court issued its spoliation opinion, and the date on which they first realized their claims could proceed in federal court. (In other words, the date on which the plaintiffs felt they could show that a state remedy was not available and they could therefore invoke a federal court's subject-matter jurisdiction.) Long before then, the defendants argue; each tax objection demonstrated awareness of the relevant injury, and the last such objection was filed on January 12, 2016. Determining which side is correct requires determining what the Seventh Circuit meant by "could have sued." *Hileman*, 367 F.3d at 696. Does that phrase mean "could have brought claims appropriate for federal adjudication," as the plaintiffs argue? Or does it mean "became aware of the injury," such that filing suit was a possibility?

The Court finds the latter reading to be the better one. The Seventh Circuit's two-part test aims to determine when "the plaintiff knows or should know that his or her constitutional rights have been violated," *Wilson*, 956 F.2d at 740, and the court has written that "the date on which the plaintiff could have sued . . . should coincide with" that moment, *see Hileman*, 367 F.3d at 696. To adopt the plaintiffs' reading—to say the plaintiffs could not have sued for equal-protection violations until February 16, 2018—would be to say the plaintiffs did not know their equal-

protection rights were violated until that date.[25] But that assertion borders "on the frivolous," Assessor MTD 7, as the plaintiffs clearly knew their equal-protection rights were violated when they filed objections *asserting equal-protection violations* from 2005 to 2016.[26]

The plaintiffs push back on this conclusion. They specifically point to *Biddison v. City of Chicago*, in which the Seventh Circuit held that an unexhausted takings claim had "not yet accrued for purposes of the statute of limitations." 921 F.2d 724, 728-29 (7th Cir. 1991). The harm of a taking is the taking itself, the plaintiffs imply, and the fact that the claim could not begin to accrue until Biddison exhausted his state court remedies shows that "could have sued" must require, among other things, a basis to access the court's jurisdiction.

*Biddison*, however, is entirely consistent with the better reading above. At the time *Biddison* was decided, the injury associated with a taking was not the taking itself, but the state's subsequent denial of just compensation. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985), *overruled by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). Under that standard, Biddison's claim was not deemed premature because he had suffered an earlier injury but had not yet exhausted the proper channels of relief. Instead, it was premature because he had not yet suffered an injury and therefore could not have become aware of one.

---

[25] It is not clear, even under the plaintiffs' reading, why the plaintiffs' subjective belief as to the availability of a state remedy would govern the accrual date.

[26] Similarly, it would be odd to say the plaintiffs first knew their due-process rights were violated in February 2018 when each objection identified the exact procedural issue—the inability to "prob[e] into the Assessor's methodology or intent"—the Seventh Circuit said denied the plaintiffs an equal-protection remedy. *A.F. Moore*, 948 F.3d at 895-96; *see, e.g.*, A.F. Moore Obj. 14 ¶ 36 ("To the extent that Plaintiff's claim for violation of its federal equal protection rights is not actionable under §§ 23-10 and 23-15, by reason of the claim involving a review of the techniques, methodologies, procedures, or intent of assessing officials, or otherwise, then Illinois law fails to provide an adequate legal remedy for such violation . . . .").

In any event, *Biddison* is no longer good law. The Supreme Court clarified in *Knick v. Township of Scott* that a property owner suffers a Takings Clause violation the moment that "the government takes his property without just compensation," 139 S. Ct. at 2168, meaning that today Biddison's claim would have "accrue[d] immediately upon [the] taking," *Honchariw v. County of Stanislaus*, No. 21-15801, 2022 WL 522287, at *1 (9th Cir. Feb. 22, 2022). To the extent *Biddison* ever applied beyond the Takings Clause, *but see Williamson*, 473 U.S. at 194-95, it has no relevance to the due-process and equal-protection claims at issue here.

So, accepting that "could have sued" means "became aware of the injury," when could the plaintiffs have sued? It is not clear exactly when the plaintiffs became aware they were paying more than others for the tax years at issue. But the plaintiffs were clearly aware of all relevant injuries by January 12, 2016, the date that the last tax objection was filed. *See Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994) ("While it is unclear the exact date [the plaintiffs] knew that they were denied tax abatements, it is clear that they knew of the injury when they filed suit . . . in state court."). The plaintiffs accordingly could have sued for (and knew of) each injury by January 12, 2016,[27] and their § 1983 equal-protection claims began to accrue on or before that date.

*Due Process.* In the third amended complaint, the plaintiffs allege that certain provisions of Illinois law—those disallowing joinder of the Assessor, barring inquiry into the Assessor's motives and methods, and allowing the Collector not to answer—prevented them "from obtaining prompt and effective review of the [relevant] assessments." Third Am. Compl. 25 ¶ 77; *see id.* at

---

[27] That is true even if the plaintiffs anticipated a dismissal on jurisdictional grounds. The Court notes that, because the Seventh Circuit's opinion was based on the general contours of 35 Ill. Comp. Stat. 200/23-15 rather than spoliation, an earlier federal suit could actually have sped up this litigation.

24-25 ¶¶ 74-75 (listing these provisions). Here, too, the injury is fairly obvious: The relevant provisions denied the plaintiffs "prompt and effective review" of their claims. *Id.* at 25 ¶ 77.

The plaintiffs argue that they first became aware of this injury after reading the spoliation opinion in February 2018. Of course, they acknowledge, they knew from the beginning "that they could not sue the Assessor in state court." MTD Resp. 19. But they "did not know that the state court[] would not require timely disclosure of discovery per third-party subpoenas issued to the Assessor, nor did [they] know . . . that the state court would not sanction the Assessor for years of destroying . . . [relevant] evidence." *Id.* These holdings, the plaintiffs say, first told them something was procedurally amiss.

The Court disagrees. For a procedural-due-process claim, the plaintiff generally becomes aware of the injury "at the time [the] process was denied." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016). Here, the relevant process was denied when the plaintiffs filed their state court objections: Upon filing, each plaintiff was denied the right to name the Assessor as a defendant, demand an answer from the Collector, and so on. Any assertion that the plaintiffs were unaware of these injuries when they filed is unavailing, since each objection contained a § 1983 claim specifically contemplating the scenario in which "Illinois law fail[ed] to provide an adequate . . . remedy" based on the procedural defects in the third amended complaint.[28] A.F. Moore Obj. 14 ¶ 36; *see supra* section I.B. Although the plaintiffs may have learned more about the *consequences* of not being able to name the Assessor as a defendant in

---

[28] The objections did not explicitly mention the inability to demand an answer from the Collector. *See* 35 Ill. Comp. Stat. 200/23-15(a) ("No . . . answer by the county collector . . . need be filed."). Still, their language was broad enough to encompass all relevant procedural defects, and it strains credulity to say the plaintiffs were aware of some defects but not others when they objected. *See, e.g.*, A.F. Moore Obj. 14 ¶ 36 (using the phrase "or otherwise").

February 2018, they were all (admittedly) aware by January 12, 2016, that they could not do so.[29]
They were also aware by January 12, 2016, that they could not force the Collector to answer their
objections or inquire into the Assessor's motives and methods. It follows that (1) the plaintiffs
could have sued for each injury by January 12, 2016, and (2) the plaintiffs' § 1983 due-process
claims, like their equal-protection claims, began to accrue on or before that date.

In sum, all of the plaintiffs' equal-protection and due-process claims began to accrue on or
before January 12, 2016. Because that date falls before July 17, 2016, which is two years before
July 17, 2018 (the date of the initial federal complaint), all of the plaintiffs' § 1983 claims began
to accrue more than two years before they filed this suit.[30]

### 2. Continuing Violation

The plaintiffs next invoke the continuing-violation doctrine to preserve their equal-
protection and due-process claims. That doctrine, which "allows a plaintiff to get relief for a time-
barred act by linking it with an act that is within the limitations period," essentially pushes the
accrual date for an injury forward into that period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.
1992); *see Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (noting that the continuing-

---

[29] To the Court's knowledge, the plaintiffs did not actually try to name the Assessor as a
defendant, inquire into motives and methods, or engage in any other conduct testing the bounds of
the rules they now challenge. But this does not change the end result: The rules were on the books
and began to apply when the plaintiffs filed their objections, and the plaintiffs were aware those
rules could limit (or bar) their recovery at the time of filing. *See O'Gorman v. City of Chicago*,
958 F. Supp. 2d 928, 934 (N.D. Ill. 2013) (plaintiff aware of due-process injury when he learned
that hearing would be a sham, not when hearing occurred), *aff'd*, 777 F.3d 885 (7th Cir. 2015).

[30] Given the analysis above, the Court need not weigh the significance of things like the
January 2010 statement, which in the defendants' view "clearly" shows that the plaintiffs
"believed . . . their constitutional rights were violated" as early as 2010. Treasurer MTD 5; *see
supra* section I.C.1. Nonetheless, the Court is skeptical of the proposition that a statement made
on behalf of a single objector before consolidation speaks to what all of the plaintiffs knew or
should have known.

violation doctrine is one of accrual, not of tolling). The doctrine applies here, in the plaintiffs' view, because

> the Assessor has engaged in ongoing acts of destruction of evidence, concealment, misrepresentation, and refusal to comply with legal process, all of which are part and parcel of a continuing course of conduct and deprivation, and all to serve the one goal of concealing that he engaged in [an] unlawful scheme to underassess certain property . . . in violation of [their] constitutional rights.

MTD Resp. 24. According to the plaintiffs, then, the statute of limitations has not even begun to run; as long as the Assessor continues to abuse state procedure, that procedure remains in place, and the defendants "continue to withhold refunds," the plaintiffs' equal-protection and due-process claims "continue to accrue anew." *Id.* at 25.

The plaintiffs misunderstand the continuing-violation doctrine. As Judge Posner wrote in *Limestone Development Corp. v. Village of Lamont*, the doctrine is "not about a continuing, but about a cumulative, violation," and its purpose "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." 520 F.3d 797, 801 (7th Cir. 2008); *see also id.* (calling the doctrine "misnamed"). By way of example, Judge Posner offered the following:

> Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitle you to wait until year 15 (assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for the wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries.

*Id.* To put the example in legal terms, the continuing-violation doctrine applies when "a continuous series of events gives rise to a [single] cumulative injury," but not when "repeated events give rise to discrete injuries." *Heard*, 253 F.3d at 320. Nor does it apply when there is a "continuing injury . . . without a continuing wrong." *Deibel v. Hoeg*, 998 F.3d 768, 771 (7th Cir. 2021) (emphasis omitted). To use an example provided by Judge Easterbrook:

> If A kicks B in the shin, B may ache for days—but the time to sue starts running with the kick, not the last tinge of pain. Monthly kicks to the shin would be continuing wrongs—one tort per kick, each with its own period of limitations—but a continuing hurt from any given kick does not affect the time to sue.

*Id.* (citations omitted).

Even accepting that the Assessor's misconduct is ongoing, the plaintiffs describe at most a continuing injury stemming from a series of discrete wrongs. Like the minimum-wage violations in Judge Posner's example, each instance of overtaxation was a "discrete, isolated, and completed act[]" giving rise to an individual equal-protection injury. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 397 (7th Cir. 1999) (quotation marks omitted). Similarly, each failure of Illinois law to address the overtaxation—one per objection—gave rise to a discrete due-process harm. There was no need to wait for these injuries and harms to "blossom[] into" a single cause of action; each was immediately (and separately) actionable, as shown by the filing of 16 distinct objections in state court. *Limestone Development*, 520 F.3d at 801; *cf. id.* ("The first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level . . . ."). That the Assessor continues to abuse Illinois process, and that the plaintiffs still have still not received refunds, may be a "continuing hurt." *Deibel*, 998 F.3d at 771. But such a hurt "does not affect the time to sue," which starts running with the initial, discrete injury or injuries. *Id.* The continuing-violation doctrine does not apply to the plaintiffs' § 1983 claims, and it remains true that those claims began to accrue before July 17, 2016.[31]

---

[31] The plaintiffs' reliance on *Scherr v. Marriott International, Inc.*, 703 F.3d 1069, 1075-76 (7th Cir. 2013), is misplaced. That case stands for the proposition that, given the Americans with Disabilities Act's use of "is being subjected to" and "is about to be subjected to," either "a continuing or a threatened violation of the ADA is an injury within the meaning of the Act." *Id.* at 1076 (quotation marks omitted). Regardless of whether *Scherr* has relevance beyond the Americans with Disabilities Act, there is no dispute that the continuing-violation doctrine applies to claims brought under § 1983 generally. It simply does not apply here.

### 3. Equitable Estoppel

Even so, the plaintiffs insist, the statute of limitations should be tolled and their § 1983 claims allowed to proceed.[32] They argue that equitable estoppel, which "suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing," must keep those claims alive.[33] *Singletary v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 9 F.3d 1236, 1241 (7th Cir. 1993). "Classic examples" of equitable estoppel include hiding and destroying evidence, the plaintiffs write, and here the Assessor did both. *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 676 (7th Cir. 2009). To be precise, the Assessor (1) lied to the public about his assessment practices and rates, (2) refused to comply with subpoenas, and (3) hid and destroyed relevant evidence, and these "unlawful" actions "delayed—by years—a conclusion that the state court did not offer an adequate, plain, or speedy remedy [for] the Plaintiffs' constitutional claims." MTD Resp. 27-28.

The Court once again disagrees. Even assuming the Assessor committed all of the wrongs just described, none of those wrongs actively "prevent[ed] the plaintiff[s] from suing" in federal court. *Singletary*, 9 F.3d at 1241. As discussed, the plaintiffs knew about (1) the Assessor's scheme, and (2) the related harms they suffered by January 12, 2016, and they could have sued regarding those claims on or before that date.[34] *See supra* section II.A.1. While the misconduct

---

[32] Because the statute of limitations for a § 1983 claim "is procedural rather than jurisdictional," it is "potentially subject to equitable tolling and equitable estoppel." *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992).

[33] The Court looks to Illinois law to determine the contours of equitable estoppel and equitable tolling. *See, e.g.*, *Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998) ("Although federal law defines the accrual of the claim for a constitutional tort, state law supplies the period of limitations and the associated doctrine of tolling.").

[34] Perhaps, if the Assessor had taken affirmative steps to prevent the plaintiffs from learning of his scheme until after July 17, 2016, he would be estopped from asserting a statute-of-limitations defense regardless of when the plaintiffs were injured. But the plaintiffs all filed objections addressing the scheme before the limitations period began, so there "can . . . be no doubt that

alleged might have delayed the plaintiffs' receipt of the spoliation opinion, that opinion is not what gave rise to the plaintiffs' § 1983 claims. Because none of the Assessor's actions prevented the plaintiffs from learning about (1) the relevant constitutional violations, or (2) their source, equitable estoppel does not apply.

### 4. Equitable Tolling

To recap thus far: The plaintiffs' § 1983 claims began to accrue before July 17, 2016, the continuing-violation doctrine does not affect the accrual date, and equitable estoppel does not toll the statute of limitations. Based on the above analysis, things might seem a bit bleak for the plaintiffs. But there is another doctrine—the doctrine of equitable tolling—that could still salvage the plaintiffs' suit. As explained below, the Court finds equitable tolling appropriate in this case, and it holds that the plaintiffs' § 1983 claims are not time-barred because the statute of limitations was equitably tolled.[35]

As a general matter, equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Singletary*, 9 F.3d at 1241. Under Illinois law, *see supra* note 33, equitable tolling "may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights

---

neither the Assessor nor his Co-Defendants prevented Plaintiffs from discovering [their] claims" and timely filing in federal court. Assessor MSJ Resp. 12.

[35] Although the parties did not discuss equitable tolling in their initial briefs, the Court "may consider an alternative ground" for granting or denying a motion "if it is fairly presented by the record, as long as the opposing party is not denied an opportunity to respond to the new theory." *S.E. ex rel. A.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 639 (6th Cir. 2008) (quotation marks omitted). Consistent with this principle, the Court asked the parties to file supplemental briefs on the equitable-tolling issue. Neither party objected to the Court's consideration of the equitable-tolling doctrine.

in the wrong forum," *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000).[36] Although no defendant actively misled the plaintiffs, *see supra* section II.A.3, the Court finds that (1) the plaintiffs mistakenly asserted their rights in state court, and (2) the extraordinary circumstances of this case prevented the plaintiffs from timely seeking federal redress.

Step briefly into the plaintiffs' shoes. At some point between 2005 and 2010, you realize that (1) the Assessor has been undervaluing certain properties, and (2) you have been overtaxed as a result. Where to file suit? You believe Illinois' tax laws deprive you of a "plain, speedy and efficient remedy" in state court, but you are not sure; after all, the Seventh Circuit has "repeatedly held that [Illinois] procedures are adequate for purposes of . . . the Tax Injunction Act," and claims "that facially adequate procedures will not function adequately in the future [are] premature." *Capra*, 733 F.3d at 717. So you file in state court, assuming that federal courts will lack jurisdiction, and you include a § 1983 claim in the event that Illinois law stops you from obtaining "an adequate legal remedy." *Nat'l Private Truck*, 515 U.S. at 592. After you file, the Circuit Court of Cook County holds that Illinois law provides an adequate legal remedy for your (properly exhausted) equal-protection claims, reaffirming your expectation that the Tax Injunction Act bars federal suit.[37] As the litigation proceeds in state court over several years, and no relief is obtained, you begin to question whether Illinois tax procedure actually provides you with a "plain, speedy and efficient" remedy. 28 U.S.C. § 1341. That issue comes to a head in 2018 when you learn that,

---

[36] Even if Illinois did not allow for equitable tolling, the Court could still consider equitable tolling under federal law. *See Heck v. Humphrey*, 997 F.2d 355, 358 (7th Cir. 1993), *aff'd on other grounds*, 512 U.S. 477 (1994).

[37] The defendants argue that at this point, "due diligence required [the plaintiffs] to act promptly" and file in federal court. Treasurer & Cnty. Suppl. Br. 8-9, ECF No. 443. But it is unclear why that would be, as the availability of relief in state court would presumably trigger the Tax Injunction Act's jurisdictional bar. And federal courts, too, are barred from issuing declaratory or injunctive relief under § 1983 "when there is an adequate remedy at law." *Nat'l Priv. Truck*, 515 U.S. at 588, 592.

based on your inability to name the Assessor as a defendant, you cannot obtain a spoliation instruction for your claim or claims. So you promptly file in federal court, and you learn for the first time in 2020 that Illinois law deprived you of a remedy (never mind a plain, speedy, and efficient one) from the outset. *See A.F. Moore*, 948 F.3d at 896.

None of this shows a lack of diligence. In fact, quite the opposite: The plaintiffs filed objections in state court given jurisdictional uncertainty, and until the spoliation ruling they "reasonably believed they had done everything required of them" to obtain relief. Pls.' Suppl. Br. 4, ECF No. 444. It is now clear that (1) the plaintiffs "mistakenly asserted [their] rights" in the Circuit Court of Cook County, and (2) the circuit court's rulings prevented the plaintiffs from timely asserting their rights "through no fault" of their own. *Clay*, 727 N.E.2d at 223; *Singletary*, 9 F.3d at 1241; *see Griffin v. Willoughby*, 867 N.E.2d 1007, 1016 (Ill. App. Ct. 2006) ("Where the plaintiff cannot reasonably be expected to sue in time because of disability, irremediable lack of information, or *other circumstances beyond his control*, the statute of limitations will be tolled until he is able . . . to file his suit." (emphasis added)). Courts have found equitable tolling appropriate under similar "extraordinary" circumstances, and the Court finds it appropriate here. *Clay*, 727 N.E.2d at 223; *see, e.g.*, *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986) (equitable tolling appropriate because jurisdictional question unclear when plaintiff erroneously filed in state court; plaintiff's state court filing "demonstrated the due diligence which statutes of limitations are designed to engender, and put [the defendant] on notice that it had to maintain the evidence necessary to its defense"); *Walck v. Discavage*, 741 F. Supp. 88, 91-92 (E.D. Pa. 1990) (similar).

The defendants raise two main objections to the Court's reasoning. First, they say, equitable tolling "is rarely applied" in Illinois. *Sostand v. West*, No. 21-cv-01732, 2021 WL

1962399, at *2 (N.D. Ill. May 17, 2021) (quotation marks omitted); *see also, e.g.*, *Foryoh v. Hannah-Porter*, 428 F. Supp. 2d 816, 821 (N.D. Ill. 2006) ("Illinois precedent teaches that principles of equitable tolling must be applied with caution." (quotation marks omitted)), *aff'd*, 217 F. App'x 534 (7th Cir. 2007). But how often a doctrine comes into play does not bear on its application to a particular set of facts. And even if it did, this is a "rare case" in which the application of a rare doctrine strikes the Court as proper. *See A.F. Moore*, 948 F.3d at 891 ("We are left to conclude that this is the rare case in which taxpayers lack an adequate state-court remedy.").

Second, the defendants argue that they will be unfairly prejudiced if the statute of limitations is equitably tolled. It is not clear, however, that prejudice factors into the equitable-tolling analysis under Illinois law. *Compare Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 562 (7th Cir. 1996) (stating, without citing Illinois precedent, that considerations "weighing in favor of equitable tolling must be balanced against the possibility of prejudice to the defendants occasioned by the delay"), *with Clay*, 727 N.E.2d at 614 (making no mention of prejudice). Regardless, the Court does not believe that equitable tolling will unfairly prejudice the defendants. The defendants are correct that the plaintiffs "have been aware of their claims against Defendants for decades." Assessor Suppl. Br. 8, ECF No. 442 (emphasis omitted). But the defendants have been aware of the plaintiffs' claims for nearly that long: Woodfield first subpoenaed the Assessor in 2009, and the Collector (represented by the State's Attorney of Cook County) was a named defendant in each of the plaintiffs' objections. *See, e.g.*, Woodfield Mot. 1. Although the defendants may have to piece together "complex factual details from decades past with limited witnesses, recollections, and documents," Treasurer & Cnty. Suppl. Br. 10, ECF No. 443, the need for that task falls as much on the defendants as the plaintiffs, as the plaintiffs' objections should

have "put [the defendants] on notice that [they] had to maintain the evidence necessary to [their] defense," *Valenzuela*, 801 F.2d at 1175.

Before concluding, a brief discussion of the counterfactual is warranted. Consider the scenario in which equitable tolling does not save the plaintiffs' claims. And consider, in that scenario, a taxpayer in a situation like the one here: She has a colorable claim related to a state or local tax, but she worries it will not succeed because of a (previously identified) procedural defect. What will that plaintiff, knowing that equitable tolling will not apply, do? She will likely file her state objection and federal suit simultaneously, staying the latter until the procedural issue has been resolved in state court. But that, to use Judge Hamilton's word, is Kafkaesque: The federal suit could be pending for decades, a mere placeholder to preserve a claim that in all likelihood will not be heard. *See A.F. Moore*, 948 F.3d at 893 ("We construe the Tax Injunction Act's limitations restrictively because the Act is meant to dramatically curtail federal-court review of state and local taxation."). That cannot be the correct result, and it cannot be that the plaintiffs—who could have filed in federal court earlier, but otherwise took an appropriate (and arguably correct) procedural path—were first too early and are now too late.[38]

Although each of the plaintiffs' § 1983 claims began to accrue before the limitations period, equitable tolling renders those claims timely.[39] The § 1983 claims are not barred by the two-year

---

[38] Too early, as Judge Hamilton noted, because a remedy appeared to be available in state court, and too late because such a remedy was never actually available.

[39] The Court need not determine the precise date that "the barrier preventing the plaintiff[s] from filing suit [was] removed." *Landwer v. Deluxe Towing, Inc.*, 249 N.E.3d 1039, 1046 (Ill. App. Ct. 2024). Regardless of whether it was the date of the spoliation opinion (February 16, 2018), the date on which the Seventh Circuit issued its Tax Injunction Act decision (January 29, 2020), or some point thereafter, the plaintiffs' claims were timely filed on July 17, 2018. The Court also need not consider the plaintiffs' voluntary-dismissal argument, although it doubts that the Illinois savings statute can "retroactively revive a claim that was already barred by the statute of limitations at the timing of filing." Treasurer & Cnty. Mot. to Dismiss Reply 13, ECF No. 410;

statute of limitations, and the plaintiffs' motion for partial summary judgment is granted as to those claims. The defendants' motions to dismiss as to those claims are denied.[40]

### B.     State Claims

Having resolved the status of the plaintiffs' § 1983 claims,[41] the analysis of the state law claims is fairly straightforward. The defendants argue that those claims are time-barred under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("ITIA"), which says claims like those at issue here must be "commenced . . . against a local entity or any of its employees . . . within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101(a); *see id.* 10/1-201, 1-206 (defining "[l]ocal . . . entity" to include counties and "all other local governmental bodies"). Because the plaintiffs received (and knew of) their injuries by January 12, 2016, the defendants contend, the ITIA mandates dismissal of the state law claims. *See Swilley v. Builder's Cap. Corp.*, Nos. 1-09-1426 & 1-09-2307, 2012 WL 6935250, at *10 (Ill. App. Ct. Feb. 6, 2012) (claim begins to accrue for purposes of the ITIA when "plaintiff knows or reasonably should know of an injury and that the injury was wrongfully caused"). The plaintiffs disagree, arguing that because they seek only declaratory and injunctive relief, the ITIA's limitations period does not apply. *See* 745 Ill. Comp. Stat. 10/2-101 ("Nothing

---

*see, e.g.*, *Grumhaus v. Comerica Sec., Inc.*, No. 99-cv-01776, 2003 WL 22136307, at *2 (N.D. Ill. Sept. 16, 2003).

[40] Given that (1) the statute of limitations did not expire, and (2) the plaintiffs have not "knowingly slept upon [their] rights and acquiesced for a great length of time," the grant of the plaintiffs' motion and denial of the defendants' motions also applies to laches. *See Tillman v. Pritzker*, 183 N.E.3d 94, 102 (Ill. 2021) (quotation marks omitted).

[41] Because those claims can proceed, the Court "may not decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3)." *Abdurakhmanova v. Gold Star Carriers Inc.*, No. 21-cv-04809, 2024 WL 4347056, at *6 (N.D. Ill. Sept. 30, 2024) (quotation marks omitted).

in this Act affects the right to obtain relief other than damages against a local public entity or public employee.").

It is not entirely clear whether the plaintiffs seek damages in this suit. The Seventh Circuit, in an opinion that is binding on the Court, wrote that the plaintiffs are pursuing "only injunctive and declaratory relief." *A.F. Moore*, 948 F.3d at 896; *see also, e.g.*, *Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439, 443 (Ill. 2004) (action requesting "return of the . . . fees collected pursuant to [an unlawful] ordinance" did not seek damages for purposes of the ITIA). But the plaintiffs request attorney's fees and an order directing the Collector to provide refunds with interest, and these requests may be legal rather than equitable. Third Am. Compl. 30-31 ¶ 98(c), (e); *see, e.g.*, *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("Almost invariably[,] suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." (cleaned up)); *Soucek v. Breath of Life Pro. Servs.*, 205 N.E.3d 788, 801 (Ill. App. Ct. 2021) ("[T]he trial court must consider what, if any, attorney fees, costs, interest, and other damages or penalties are due plaintiff . . . .").

The Court, however, does not need to resolve the damages question. That is because, even assuming (1) all of the plaintiffs' state law claims seek damages, (2) the ITIA applies to all of those claims, and (3) those claims began to accrue at the same time as the plaintiffs' § 1983 claims, the Court would find equitable tolling of the one-year limitations period warranted for the reasons given above.[42] *See supra* section II.A.4 (noting that Illinois courts recognize equitable tolling).

---

[42] The same would apply for any other relevant limitations period, although the defendants point only to the ITIA's one-year limit.

Thus, to the extent July 17, 2017, is a relevant date, the plaintiffs' state law claims were timely filed despite accruing before then. Those claims are not barred by ITIA's statute of limitations, and the plaintiffs' motion for partial summary judgment is granted as to the state law claims as well. The defendants' motions are denied insofar as they seek dismissal of the state law claims.[43]

## III.   CONCLUSION

For the foregoing reasons, the plaintiffs' motion for partial summary judgment is granted, and the defendants' motions to dismiss are denied.

Date: March 19, 2025

John J. Tharp, Jr.
United States District Judge

---

[43] Again, this grant and these denials also apply to laches. *See supra* note 40.