IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A.F. MOORE & ASSOCIATES, INC.; J. EMIL ANDERSON & SON, INC.; ERLING EIDE; FOX VALLEY/RIVER OAKS PARTNERSHIP; SIMON PROPERTY GROUP (DELAWARE), INC., <br><br> Plaintiffs, <br><br> v. <br><br> MARIA PAPPAS, Cook County Treasurer and Ex Officio County Collector; FRITZ KAEGI, Cook County Assessor; COUNTY OF COOK, <br><br> Defendants. | No. 1:18-cv-04888 <br><br> Judge John J. Tharp, Jr. |

## ORDER

The objections to the Magistrate Judge's ruling on the plaintiffs' motion for a protective order barring discovery regarding the fair market value of the subject properties [308] are overruled, and the plaintiffs' motion for a protective order [214] is denied. Discovery on the issue of the subject properties' fair market value may proceed in accordance with the orders of the Magistrate Judge.

## STATEMENT

The plaintiffs are taxpayers who have sued Cook County and its Treasurer and Assessor for violating their equal-protection rights under the United States and Illinois Constitutions. They also allege that certain Illinois tax laws violate their state and federal due-process rights. Among other relief, they seek a refund of the taxes they allegedly overpaid due to the defendants' discriminatory practices. After the defendants sought discovery regarding the fair market value of the plaintiffs' properties (the "subject properties"), the plaintiffs moved for a protective order barring such discovery. Mot. for Protective Order, ECF No. 214. Magistrate Judge Finnegan denied the motion after briefing and oral argument, and she later issued a written order providing a detailed analysis of her decision. *A.F. Moore & Assocs. v. Pappas*, No. 18-cv-04888, 2023 WL 2664391 (N.D. Ill. Mar. 28, 2023).[1] The plaintiffs timely objected to that ruling.[2] For the reasons

---

[1] Judge Finnegan's order is available on the docket at ECF No. 304.

[2] Plaintiffs Simon Property Group and Fox Valley/River Oaks Partnership subsequently responded to the discovery requests at issue in this Statement, effectively withdrawing their objections to Judge Finnegan's ruling (although not waiving any objection to admissibility or

stated below, the plaintiffs' objections are overruled, and discovery on the fair market value of the subject properties may proceed.

I.  **Background**

Because Judge Finnegan extensively reviewed the relevant background in her order, only a brief summary is necessary here. *Id.* at *1-8; *see generally* Third Am. Compl. 7-23 ¶¶ 15-65, ECF No. 378 (listing factual allegations).[3] According to the third amended complaint, the taxes for each subject property were calculated by multiplying the property's estimated market value by a specified percentage, resulting in the "assessed value." *See* Third Am. Compl. 8-9 ¶¶ 19, 22, 24. The specified percentage, also called an "assessment level," was set by ordinance based on property class; for example, at one time, small residential properties had an assessment level of 16%, commercial properties a level of 38%, and industrial properties a level of 36%. *Id.* at 8 ¶ 20. The plaintiffs call these assessment levels "*de jure* levels" because they are the codified levels required to be applied under the law. *See id.* at 9-10 ¶¶ 25-26. The Assessor allegedly derived estimated market values, which the plaintiffs call "official market values," based on actual sales. *Id.* at 11, 15-16 ¶¶ 30, 46.

The crux of the plaintiffs' allegations is that in the relevant tax years, the defendants systematically undervalued a majority of properties similar to theirs such that those properties were actually taxed at an unlawful "*de facto* level" significantly below the *de jure* level required by law. *See, e.g.*, *id.* at 11 ¶ 30 ("The Assessor deliberately and systematically distorted the results of his regression process by adding an adjustment factor to the regressions, debasing the real estimates and creating fictitious market values. The Assessor put the fictitious market values on county records available to the public to make it appear that . . . assessments were based on the 16% *de jure* level. In reality, the assessments were based on the *de facto* level, which was approximately 9% of the Assessor's estimates of actual market value." (quotation marks omitted)). The plaintiffs claim that a minority of properties, including the subject properties, were properly assessed at the higher *de jure* level. Based on this discrepancy, the plaintiffs say that the defendants violated their equal-protection rights: While similarly classified properties received a tax break in the form of a *de facto* assessed value, the subject properties did not.[4] *See, e.g.*, *A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889, 890 (7th Cir. 2020). The plaintiffs accordingly ask for, among other things, an order

---

consideration of the relevant materials). *See* Tr. of 11/20/23 Hr'g 11:23-13:2, ECF No. 361; Tr. of 1/13/25 Hr'g 6:17-7:17, ECF No. 438.

[3] Judge Finnegan based her ruling on the plaintiffs' second amended complaint. *See A.F. Moore*, 2023 WL 2664391, at *1; Second Am. Compl., ECF No. 192-1. Although the plaintiffs have since filed a third amended complaint, that complaint "does not allege any new counts or modify the [second amended complaint's] theories of liability." Mot. for Leave to File Third Am. Compl. 4, ECF No. 373; *see id.* at 2-4. Accordingly, the third amended complaint does not affect the Court's overall analysis.

[4] The plaintiffs also claim that the defendants violated their right to uniformity under the Illinois Constitution. *See* Ill. Const. art. IX, § 4(b) ("Any such classification shall be reasonable and assessments shall be uniform within each class."). Because this claim aligns with the plaintiffs' equal-protection claims, the Court discusses uniformity and equal protection together.

directing the Treasurer to "refund . . . the [excess] taxes collected upon the" *de jure* assessed values. Third Am. Compl. 30 ¶ 98(c).

The plaintiffs now urge the Court to grant them a protective order barring discovery regarding the fair market value of the subject properties. By seeking such discovery, the defendants hope to show that the estimated fair market values of the subject properties were also undervaluations; in this way, they intend to defeat the equal-protection claims by proving that the plaintiffs were taxed at the same *de facto* levels they allege others received. In her order denying the plaintiffs' protective-order motion, Judge Finnegan found no "justification to bar all [fair-market-value] discovery as wholly irrelevant and . . . disproportional." *A.F. Moore*, 2023 WL 2664391, at *15; *see id.* ("Such evidence would conceivably allow a factfinder to . . . defeat (or reduce) the tax refunds [sought by the plaintiffs]. . . . Absent a case directly addressing [whether the law bars the defendants from offering valuation evidence in these circumstances], FMV discovery must proceed unless the district judge issues an early ruling barring such evidence."). The plaintiffs object to that finding and ask the Court to set it aside.

## II. Discussion

When a non-dispositive, pretrial matter is referred to a Magistrate Judge, a party may object to the decision within 14 days, which the plaintiffs did. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). And while views differ as to what "contrary to law" means for purposes of Rule 72(a), courts in this District have found that an order is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Henry v. Centeno*, No. 10-cv-06364, 2011 WL 3796749, at *1 (N.D. Ill. Aug. 23, 2011) (quotation marks omitted); *see also, e.g.*, *Dirickson v. Intuitive Surgical, Inc.*, No. 19-cv-07149, 2021 WL 4461574, at *1 (N.D. Ill. July 2, 2021). For the following reasons, the Court agrees with Judge Finnegan, finds that no part of her order is clearly erroneous or contrary to law, and overrules the plaintiffs' objections.

### A. Relevance

First, the plaintiffs argue that that discovery regarding the fair market value of the subject properties is no longer relevant to any claim or defense in this suit because the complaint no longer contests the propriety of the subject properties' assessments. *See, e.g.*, *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) (discovery sought must be relevant, and "[r]elevance focuses on the claims and defenses in the case, not its general subject matter").

In count VI of their initial complaint, the plaintiffs explicitly alleged that the defendants incorrectly and illegally overvalued the subject properties, thus placing their fair market values at issue. Compl. 40 ¶ 96, ECF No. 1 ("The assessed value of each of the subject properties exceeded the legally-required percentage of each property's fair market value, even if that percentage is considered to be the level of assessment required by the Classification Ordinance, since a correct estimate of the property's fair market value would have produced a significantly lower assessed

3

value."); *see also* First Am. Compl. 48 ¶ 96, ECF No. 124 (same). But the third amended complaint contains (and the second amended complaint contained) no count VI, and the operative pleading no longer alleges that the valuations of the subject properties were "excessive, incorrect and illegal." First Am. Compl. 48. Instead, the plaintiffs now concede that their property taxes complied with the law, but maintain that the defendants violated the United States and Illinois Constitutions by systematically undervaluing other similarly classified properties. Third. Am. Compl. 16 ¶ 47 ("Plaintiffs do not contest the official market values upon which the certified assessed values were based for each subject property for the tax years in question. But Plaintiffs do contest the certified assessed values as discriminatory under the U.S. Constitution and Illinois Constitution . . . .").

Because the official values of the subject properties are uncontested, the plaintiffs say, discovery regarding those values is now irrelevant. Pls.' Objs. 9, ECF No. 308 ("The correct assessment[] of Plaintiffs' properties in terms of . . . market value is undisputed, and therefore alternatives to [the] presumptively correct market values are not relevant to Plaintiffs' well-pled claim." (cleaned up)). The defendants disagree, contending that "the true market values, as opposed to just the official market values of the subject properties, are at issue in this case." Resp. 9, ECF No. 311; *see Walsh v. Prop. Tax Appeal Bd.*, 692 N.E.2d 260, 262 (Ill. 1998) ("Uniformity requires equality . . . of taxation in proportion to the value of the property taxed. Thus, taxing officials may not value the same kinds of properties within the same taxing boundary at different proportions *of their true value*." (citation omitted) (emphasis added)).

Discovery regarding the fair market value of the subject properties is hardly irrelevant. Even assuming the plaintiffs' burden "is [only] to establish that other properties in their classes were subjected to a lower *de facto* assessment level," Reply 5, ECF No. 318 (emphasis omitted), relevance "focuses on . . . claims *and defenses*," *Motorola*, 365 F. Supp. 3d at 924 (emphasis added). If the subject properties were *also* subjected to the "lower *de facto* assessment level" because they were undervalued at the time of estimation, that would undermine the plaintiffs' equal-protection claims and serve as a defense to their prima facie case. Reply 5. In other words, the fact that the plaintiffs do not dispute whether they were taxed at the *de jure* rate does not preclude the defendants from presenting evidence that in fact the subject properties were taxed below that rate.[5] The Court thus agrees with Judge Finnegan's relevancy determination.[6] *A.F. Moore*, 2023 WL 2664391, at *9 ("Again, such evidence would seemingly support Defendants' argument that Plaintiffs were not among the minority of properties taxed at the de jure level but

---

[5] Indeed, one of the curiosities of this case is why the Assessor would systemically undervalue most taxable parcels but not the subject properties. Evidence establishing that the subject properties were *not* assessed at the *de jure* level would resolve that mystery.

[6] And regardless, it hardly seems appropriate to allow the plaintiffs to revisit fair market values but preclude the defendants from doing so. The plaintiffs base their allegations of systematic undervaluation on studies that challenge the assessed values (and thus the fair market values) of non-subject properties, but they seek to prevent the defendants from obtaining similar discovery on the fair market values of the subject properties, even though the latter may bear on the former. *See* Resp. 10-11 ("If plaintiffs are permitted to . . . [make] a distinction between the subject and [non-subject] properties, defendants must be permitted to explore whether that distinction actually exists through discovery.").

rather among the majority of properties that they allege were taxed at a lower de facto level."); *see also id.* at *12 (similar).

Even if the Court disagreed, however, evidence that the subject properties were undervalued would be relevant to the tax refund sought by each plaintiff. While the plaintiffs previously acknowledged this point, writing that "[i]ndividual property valuations may relate to . . . tax refund amounts," here they argue that because they seek only restitution, there is no disputed question regarding damages or loss. Pls.' Omnibus Mot. for Protective Order 11, ECF No. 146; *see Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439, 444 (Ill. 2004) (differentiating, in the context of a state statute-of-limitations law, actions seeking damages and actions seeking restitution). The refunds "are [simply] due," in other words, when the plaintiffs prove illegal conduct; there is no need to argue over the amount(s) that must be refunded. Reply 13; *see also* Pls.' Objs. 21 ("[T]he refund sought by Plaintiffs is in the nature of restitution, measured by Defendants' unjust gain, and not subject to change."). The Court disagrees. Even assuming that the plaintiffs seek only equitable relief, *but see* Statute of Limitations Op. 32, nothing in *Raintree* (on which the plaintiffs rely) stands for the proposition that information regarding the *proper amount* of restitution is undiscoverable. And the true market values of the subject properties, which will determine how much the plaintiffs actually overpaid, are surely relevant to the proper amount of restitution. The plaintiffs' calculations present one set of restitution values, but the Court is not convinced that the defendants should be precluded from obtaining discovery so they may put forward their own calculations.[7]

### B.     Presumption of Correctness

In any event, the plaintiffs argue, the official market values derived by the Assessor are presumed correct under state law and "require no further proof." Pls.' Objs. 10; *see* Fed. R. Evid. 302 ("In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision."). The defendants "have already determined the market value of the subject properties," the plaintiffs say, and the presumption of correctness means that they "are not entitled to do so again." Pls.' Objs. 3.

As explained by Judge Finnegan, the yearly assessed values of all properties are certified pursuant to 35 Ill. Comp. Stat. 200/16-150, which requires the Assessor and a majority of the Board of Review[8] members to sign an affidavit swearing "that the assessed value . . . is, in our opinion, a just and equal assessment of the property for the purposes of taxation according to law." *A.F. Moore*, 2023 WL 2664391, at *5-6 (quotation marks omitted). Even if an assessed value is ultimately reduced after a taxpayer files an objection in court, the certified value appearing in the assessment books is not changed. *Id.* at *6. Under Illinois law, "[t]he taxes, assessments, and levies that are [certified] shall be presumed correct and legal, but the presumption is rebuttable." 35 Ill. Comp. Stat. 200/23-15(b)(2). The law continues, in the next sentence: "The plaintiff has the burden

---

[7] Because the Court concludes that Judge Finnegan correctly ruled on relevance, it need not address the defendants' argument that "[a]n early evidentiary ruling [finding the true market values of the subject properties irrelevant] would be unfair and unprecedented." Resp. 13.

[8] Tax appeals are first reviewed by the Assessor, and if an appeal fails, it can then be brought before the Board of Review. *See A.F. Moore*, 2023 WL 2664391, at *2.

of proving any contested matter of fact by clear and convincing evidence." *Id.* The plaintiffs insist that only they can rebut the presumption of correctness and legality, and that the defendants should not be allowed to challenge the assessed values which they themselves determined. The defendants respond that there "is no legal precedent or logical explanation for selectively applying the . . . presumption to some properties in a class, but not the others, in a complex equal protection case like this." Resp. 15.

The Court agrees with the defendants. Nothing in the relevant statute says that the presumption is only rebuttable by the plaintiff; it simply says that "the presumption is rebuttable." 35 Ill. Comp. Stat. 200/23-15(b)(2). True, the next sentence begins with "[t]he plaintiff," and it notes that the plaintiff has the burden of proving "any contested matter of fact." *Id.* But it is far from clear that this sentence affects the one before it. And even if it did (perhaps because the propriety of an assessment is a contested matter of fact), the statute specifically contemplates a "garden-variety" state tax case: one in which the taxpayer challenges, via a state court objection, the tax the government says is due. There is no indication that the statue was intended to preclude the Assessor or Treasurer from rebutting the presumption of correctness in an equal-protection case like this, where the plaintiffs themselves intend to challenge the presumption as to many, if not all, similar properties.[9] *See A.F. Moore*, 2023 WL 2664391, at *13 (describing as "internally inconsistent" the plaintiffs' arguments that (1) the defendants are bound by the presumption, and (2) this is not a typical tax case).

The plaintiffs assert that allowing the defendants to attack the correctness of the subject properties' assessments "flouts both Illinois law and the Seventh Circuit's [prior] decision" in this case. Pls.' Objs. 12. But they fail to offer binding or persuasive authority holding that the defendants should be bound, in a case like this one, to their previous value determinations. Certain cases cited by the plaintiffs simply note the uncontested nature of certain market valuations, and are therefore unhelpful. *See, e.g.*, *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R.*, 174 N.E.2d 182, 185 (Ill. 1961) ("There is a presumption of statutory compliance, and the testimony of [the] railroad assessor . . . verifies the full valuation. There is no evidence in the record to overcome the presumption and proof, and we must conclude that objectors' property was assessed at 100%."). As aptly stated by Judge Finnegan, other cases cited by the plaintiffs do not address whether the "certification of assessed value bars taxing authorities relying on previously-unknown [fair-market-value] information to defend a taxpayer-filed lawsuit for tax refunds." *A.F. Moore*, 2023 WL 2664391, at *13; *see, e.g.*, *People ex rel. McDonough v. Ill. Cent. R.R. Co.*, 190 N.E. 82, 84 (Ill. 1934).[10] And while the plaintiffs cite to the decision of the Cook County Circuit Court in the

---

[9] At the very least, Judge Finnegan did not misapply (or fail to apply) relevant law in reaching this conclusion, and the Court "is [not] left with the definite and firm conviction that a mistake has been made." *Weeks*, 126 F.3d at 943; *see A.F. Moore*, 2023 WL 2664391, at *13.

[10] In *McDonough*, for example, the Illinois Supreme Court held that the plaintiff did not have to "prove that its own property was assessed at its full market value." Pls.' Objs. 14; *see McDonough*, 190 N.E. at 84. But whether the plaintiff must so prove and whether a defendant can introduce evidence to the contrary are two different questions, and *McDonough* addressed only the former. Similarly, *In re Application of Rosewell* addressed only whether the improper valuation of other properties rebuts the presumption that a taxpayer's property was correctly valued. *See* 478

6

litigation antecedent to this case, the issue presented here was not before that court. The Illinois Supreme Court has also written that "the decisions of circuit courts have no precedential value." *Delgado v. Bd. of Election Comm'rs of the City of Chi.*, 865 N.E.2d 183, 188 (Ill. 2007).

Ultimately, the plaintiffs argue that allowing discovery on the fair market values of the subject properties would (improperly) let the defendants revalue those properties a decade or more after they were assessed. But that is what the plaintiffs intend to do regarding the non-subject properties in order to prove their theory of systematic undervaluation, and the plaintiffs have not convinced the Court that they, and only they, are entitled to rebut the presumption of correctness.

### C. Pleading Issues

The plaintiffs next argue that discovery regarding the fair market values of the subject properties is unwarranted because the defendants did not, in their answers, contest the fair market values of those properties. In the alternative, they argue that the defendants' theory—the subject properties themselves were undervalued—is an affirmative defense that has not been adequately pled. Neither argument is persuasive.

Before proceeding, the Court notes that the plaintiffs' filing of a third amended complaint may render the first point moot. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (noting that a new complaint "wipes away" prior pleadings). Nonetheless, the Court discusses Judge Finnegan's ruling on this point, as the defendants' answer (or answers) to the third amended complaint could use the same language disputed here. The filing of a third amended complaint does not moot the second point, because an amended complaint that does not "fundamentally change[] the scope or theory of the case" does not necessarily open the door to new affirmative defenses. *Burton v. Ghosh*, 961 F.3d 960, 966-68 (7th Cir. 2020); *see supra* note 3.

#### 1. Answers

In the plaintiffs' view, the Assessor's answer to the second amended complaint "clearly admits that the officially determined market values" of the subject properties are undisputed, and Judge Finnegan misread the answer in concluding otherwise. Pls.' Objs. 16; *see A.F. Moore*, 2023 WL 2664391, at *12 & n.12; Assessor Answer to Second Am. Compl. ("Assessor Answer") 21-22 ¶¶ 38-40, ECF No. 209. The Court disagrees. Properly read, the Assessor's answer states that the assessed values were certified according to law at the time of assessment, and that the *plaintiffs* do not contest those values (or the estimated market values on which they were based). Nowhere does the answer state that (1) the certified values accurately reflected the fair market values of the subject properties during the relevant tax years, or (2) the *defendants* do not contest those values (or the estimated market values on which they were based). *See* Assessor Answer 21 ¶ 38 ("The Assessor certifies final values that were established by the Assessor and reviewed by the Board of Review . . . ."); *id.* ¶ 39 ("The Assessor admits that certified assessed value is derived from a fair market value estimate and the application of the appropriate level of assessment pursuant to State

---

N.E.2d 343, 349 (Ill. 1985). *Rosewell* said nothing about whether the taxing authority, if it so desired, could have attempted to rebut the presumption.

and local law."); *id.* at 22 ¶ 40 ("The Assessor admits that Plaintiffs purport to not contest the . . . official fair market values[] of each of the subject properties.").

The plaintiffs also take issue with the defendants' claims that they "lack knowledge or information sufficient to form a belief" as to certain allegations regarding the assessment and taxation process. Pls.' Objs. 16 (quotation marks omitted); *see Ty Inc. v. Esquire Licensing, LLC*, No. 18-cv-02726, 2019 WL 13084202, at *2 (N.D. Ill. Feb. 21, 2019) (noting that Fed. R. Civ. P. 8(b), under which a lack of knowledge or information can operate as a denial, "will not apply if . . . the fact to which [ignorance] is asserted is plainly and necessarily within the defendant's knowledge, making such an averment palpably untrue" (quotation marks omitted)). The defendants counter that the Assessor and Treasurer play distinct, separate roles in the assessment and taxation process, and that a lack of knowledge or information is inherent (at least as to some taxation matters) given this division of roles. The Court need not reach the defendants' argument, however: Regardless of county corporate structure, there is no indication that (1) the second amended complaint asserted the official market values were factually accurate, or (2) any defendant has (or should have) the knowledge to admit or deny any such allegation. Judge Finnegan's conclusion that the defendants contest fair market values—or at least did so in their answers to the second amended complaint—is correct.

### 2. Affirmative Defense

As to the second argument, the Court does not believe the defendants needed to plead their undervaluation theory as an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1) (listing examples of avoidances and affirmative defenses that "a party must affirmatively state" to preserve). The plaintiffs contend that the undervaluation theory qualifies as an affirmative defense because either (1) the defense "does not controvert the plaintiffs' proof," or (2) the defendants "bear the burden of proof on the issue." *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019). The first is true, they argue, because their required allegations and proof "relate only to other properties' assessments." Pls.' Objs. 18. The second is true because even if state law permits the defendants to rebut the presumption of correctness, the defendants bear the burden of (1) rebutting the presumption, and (2) showing that the subject properties were undervalued.

The Court again disagrees. To prevail on their equal-protection claims, the plaintiffs "must show that they: (1) are members of a class; (2) who are similarly situated to members of another class; and (3) were treated differently from members of that other class." *Chavez v. Ill. State Police*, 27 F. Supp. 2d 1053, 1066 (N.D. Ill. 1998), *aff'd*, 251 F.3d 612 (7th Cir. 2001).[11] The undervaluation theory is nothing more than a denial of element three; if successful, it will indeed "controvert the plaintiffs' [required] proof." *Reed*, 915 F.3d at 478. Put differently, the theory is not one that "admits the allegations in the complaint, but avoids liability . . . [by alleging] excuse, justification or some other negating matter[]." *Id.* at 477 n.1 (quotation marks omitted). Instead, it

---

[11] Although the plaintiffs attempt to distinguish *Chavez* based on its subject matter (race discrimination in traffic stops), the Court sees no principled basis for this distinction. The quoted language speaks in general terms to the elements of an equal-protection claim.

directly contradicts the complaint's allegations that the subject properties were assessed at the *de jure* levels.[12]

Regarding the burden of proof, it is first worth noting that, at least for the plaintiffs' federal equal-protection claims, the presumption of correctness may not apply. Fed. R. Evid. 302 (state law presumption is only relevant to "a claim or defense for which state law supplies the rule of decision"). But even assuming the presumption applies, and even assuming that the defendants must overcome the presumption to defeat the plaintiffs' equal-protection claims,[13] the defendants do not bear the burden of proof as to the subject properties' valuations. A rebuttable presumption "does not shift the burden of persuasion, which remains on the party who had it originally." *Id.* R. 301. So while the defendants may bear "the burden of producing evidence" to demonstrate that the subject properties were undervalued, the burden of proving that they were not—that is, the burden of setting forth a prima facie equal-protection case—still rests with the plaintiffs. *Id.* Because the defendants' undervaluation theory (1) directly controverts the plaintiffs' required proof, and (2) is not one on which the defendants bear the burden of proof for equal-protection purposes, it is not an affirmative defense that "must be pleaded" separately. *Reed*, 915 F.3d at 478.

That is not the end of the matter. Even accepting the plaintiffs' argument that the undervaluation theory is an affirmative defense, the Court would likely find its inclusion in the answer (or answers) to the third amended complaint proper. *See id.* at 478 ("[T]he rule that forfeits an affirmative defense not pleaded in the answer . . . [is] not to be applied rigidly. We will generally find that the failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." (cleaned up)). And the discovery the defendants seek is relevant to damages (or restitution) in any event; to the Court's knowledge, no affirmative defense is necessary to challenge what the plaintiffs say is owed. On the points in this section, too, Judge Finnegan got it right. *See A.F. Moore*, 2023 WL 2664391, at *12.

### D. Finality

The plaintiffs separately assert that allowing fair-market-value discovery to proceed would violate the "fundamental principle that the actions of the taxing authorities [must] have some finality." *Chi. Gravel Co. v. Rosewell*, 469 N.E.2d 1098, 1102 (Ill. 1984); *see also People ex rel. Greer v. Hunt*, 142 N.E. 522, 523 (Ill. 1924) ("There must be some stability in the administration of the taxing laws by the tax authorities, and some security to the property owner in reliance on

---

[12] As noted, the plaintiffs argue that their burden is solely to "establish that *other* properties . . . were subjected to a lower . . . assessment level than the . . . level presumptively applied to the subject properties." Reply 5. But the cases the plaintiffs cite for that proposition are not on point, and the Court finds the argument unpersuasive. *A.F. Moore*, 948 F.3d at 891, 895 (accepting as true the *allegation* that the plaintiffs were taxed at a higher rate); *Walsh*, 692 N.E.2d at 263 (parties agreed on value of property at issue); *see generally Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n*, 488 U.S. 336 (1989) (saying nothing about the propriety of the assessed values or what must be proved).

[13] *Cf. People ex rel. Enrietta v. Gulf, Mobile & Ohio R.R.*, 195 N.E.2d 174, 175-77 (Ill. 1963) (finding, in a case on constructive fraud, that the official contesting another department's valuation method fell "short of overcoming the presumption" that the method was correct).

the official acts of the authorities."). Judge Finnegan rejected this argument, reasoning that (1) the finality principle is relevant when state officials try to collect more money based on reassessment, and (2) here, no assessing authority "initiate[d] proceedings to retroactively increase past tax assessments and obtain a court order requiring a taxpayer to pay additional taxes." *A.F. Moore*, 2023 WL 2664391, at *15. To put it another way: Finality is only relevant when the government tries to reopen its books for collection, and that is not what is happening in this case.

The plaintiffs contest this narrow view of finality, arguing that cases like *Chicago Gravel* (cited above) stand for the proposition that the government may not reassess property "absent fraud." Pls.' Objs. 20. It is never permissible, in the plaintiffs' view, to revisit "market valuations which the taxpayer has not challenged and on which the taxpayer paid taxes." *Id.* And that is true whether "taxing officials [seek] reassessment to collect additional taxes" or whether they "seek reassessment to avoid refunding . . . taxes." *Id.*

The Court, like Judge Finnegan, does not read the finality principle so broadly. In *Chicago Gravel*, "the taxing authorities discovered their own clerical error . . . [and] initiated administrative proceedings to collect back taxes." *A.F. Moore*, 2023 WL 2664391, at *15. Nothing in that case stands for the principle that past valuations cannot be challenged when the plaintiff puts them at issue by, for example, seeking a refund for a tax year long in the past.[14] And in any event, the defendants here are not seeking fair-market-value discovery solely "to avoid refunding" the taxes the plaintiffs paid. Pls.' Objs. 20. Although amount of damages (or restitution) owed may factor into the relevancy calculus, the defendants seek discovery in large part to rebut the plaintiffs' claims of discrimination. It would be odd, as a practical matter, to say that (1) the plaintiffs may reassess properties of their choosing to demonstrate an equal-protection violation, but (2) finality bars the defendants from doing the same in support of their anticipated defense. Judge Finnegan did not err in her finality determination.

### E. Proportionality

Finally, the plaintiffs argue that even if the discovery is appropriate, the defendants' demands are grossly disproportionate to the needs of the case. Pls. Objs. 23 (defendants served "over 824 requests for production of documents . . . , over 301 interrogatories, 160 requests for admission, and approximately 100 third-party subpoenas"); *id.* at 7 (requested discovery includes "appraisals, leasing information, all communications with property managers, SEC filings, and mortgage and loan information, to name only a few categories"); *see* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case," considering various factors). The defendants respond by arguing that the "market discovery sought . . . is critical to their defense" and proportional given this case's complexity and long history. *See* Resp. 24 ("[T]he five plaintiffs in this case filed an action consolidating 18 cases from state court, claiming over $24 million in damages, plus interest and attorneys' fees, against three governmental bodies. Their cases span 10 tax years and multiple assessor administrations. Plaintiffs are making a novel claim and have put forward a complex ratio study to prove their damages.").

---

[14] For the reasons stated in section II.C.2 above, the Court disagrees that the plaintiffs "have only put the assessment levels of other properties at issue." Pls.' Objs. 20 (emphasis omitted).

The Court agrees with Judge Finnegan (and the defendants) that, especially in light of its relevance, barring "all [fair-market-value] discovery as . . . disproportional" is unwarranted. *A.F. Moore*, 2023 WL 2664391, at *15. That is not to say the plaintiffs cannot challenge specific discovery requests on proportionality grounds; as Judge Finnegan noted, the denial of a protective order seeking to "foreclose . . . all market value discovery" for the subject properties is not "a ruling on any [individual] market value discovery request." *Id.* at *2 (quotation marks omitted). Consistent with Judge Finnegan's order, the plaintiffs may contest or object to certain of the defendants' requests going forward. What they may not do is bar those requests "across the board." *Id.* (quotation marks omitted). That said, the Court fully expects all parties to participate in discovery in good faith and consistent with both the letter and the spirit of this ruling. As to this, read on.

### F. Briefs

Before concluding, the Court offers a note regarding the plaintiffs' briefs. The plaintiffs are clearly frustrated with the state of affairs in this case, which is perhaps understandable after nearly 20 years of litigation in both state and federal court. But frustration does not excuse acrimonious briefing, and some of the plaintiffs' remarks—those accusing the defendants of peddling "conspiracy theories" and a "false narrative," emphasizing unrelated discovery conduct, and otherwise attacking the defendants—distract from (and are unhelpful in resolving) the legal issues at hand. Reply 1-2; *see, e.g.*, Pls.' Objs. 1 (the defendants "insist on obscuring and delaying this lawsuit with irrelevancies and confusion"); *id.* at 25 (defendants "misled" Judge Finnegan); Reply 1 n.1 (the instant dispute is "superfluous," designed "only to delay and prolong discovery"); *id.* at 2 (claims regarding Assessor's conduct in state discovery are "a gross distortion . . . based on a false narrative"); *id.* at 4, 12 (denials of knowledge in answers are "ludicrous" and "disingenuous"). The Court is well aware of the allegations and background in this case; at this juncture and in light of the Court's rulings, the plaintiffs would do well to put such grievances in the rearview mirror and to focus on moving this case toward a good-faith resolution.

## III. Conclusion

Because the discovery sought is relevant to a viable defense theory in this case, and the plaintiffs have not provided authority persuading the Court that the defendants should be barred from offering fair-market-valuation evidence under the circumstances presented here, Judge Finnegan's order denying the plaintiffs' motion for a protective order was not clearly erroneous or contrary to law. The plaintiffs' objections are overruled. Discovery on the issue of the subject properties' fair market value may proceed in accordance with Judge Finnegan's (and now, Judge McLaughlin's) orders.

Date: March 19, 2025

John J. Tharp, Jr.
United States District Judge