| | |
|---|---|
| A.F. MOORE & ASSOCIATES, INC.; J. EMIL ANDERSON & SON, INC.; ERLING EIDE; FOX VALLEY/RIVER OAKS PARTNERSHIP; and SIMON PROPERTY GROUP (DELAWARE), INC., | No. 18 CV 4888 |
| *Plaintiffs*, | Judge John J. Tharp Jr. |
| v. | Magistrate Judge Daniel P. McLaughlin |
| MARIA PAPPAS, Cook County Treasurer and Ex Officio County Collector; FRITZ KAEGI, Cook County Assessor; and COUNTY OF COOK, | |
| *Defendants*. | |

## DEFENDANTS' JOINT MOTION FOR LEAVE TO CONTINUE THE DEPOSITION OF MICHAEL LARSON, LEAVE TO TAKE A SUPPLEMENTAL DEPOSITION OF ANY WITNESS BASED ON NEWLY-PRODUCED MATERIALS, AND FOR EXTENSION OF DISCOVERY DEADLINES

Defendants, MARIA PAPPAS, Treasurer and Ex-Officio Collector of Cook County (the "Treasurer"), FRITZ KAEGI, Cook County Assessor (the "Assessor"), and the COUNTY OF COOK (the "County") (collectively, the "Defendants"), by their undersigned attorneys, respectfully request pursuant to Federal Rules of Civil Procedure 26(b)(1), 26(b)(2), 30(a)(2)(A)(ii), and Local Rule 37.2, an order granting them leave to resume and complete the depositions of Michael Larson for seven additional hours of testimony, leave to take a supplemental deposition of any witness based on documents produced after their original depositions, and an order extending the discovery deadlines. In support of this motion, Defendants state as follows:

## I. INTRODUCTION

1. In January 2025, Plaintiffs assured the Court and the parties that its document production was essentially complete. In February 2025, Plaintiffs put in their discovery responses that their written discovery responses were complete. Based on those representations, on April 11, 2025, this Court set September 19, 2025, as the close of fact discovery (Dkt. 461).[1] When it became apparent after even one Simon Property witness deposition that Plaintiffs' production remained grossly deficient, Defendants were forced to file three separate motions to compel (Dkts. 476, 724, and 489), all of which were referred to Special Master Grossman and, to this day, remain undecided.

2. After this Court set the September 19, 2025, fact discovery deadline, Plaintiffs also began producing documents responding to the document requests issued by Defendants in February 2021. Although Plaintiffs insisted that their production was nearly finished in January 2025, Plaintiffs' subsequent productions after this Court entered its scheduling order (Dkt. 461) have to date amounted to ***over 100,000 pages*** in nine batches:

| Date | Bates Range | Pages |
|---|---|---|
| May 30, 2025 | RIVEROAKS_00042752 – RIVEROAKS_00042758 | 7 |
| June 11, 2025 | RIVEROAKS_00042759 – RIVEROAKS_00042875 | 117 |
| July 28, 2025 | RIVEROAKS_00042876 – RIVEROAKS_00042890 | 15 |
| Aug. 1, 2025 | RIVEROAKS_00042891 – RIVEROAKS_00043713 | 823 |
| Aug. 16, 2025 | RIVEROAKS_00043714 – RIVEROAKS_00062681 | 18,968 |
| Aug. 26, 2025 | RIVEROAKS_00062682 – RIVEROAKS_00108631 | 45,950 |
| Aug. 29, 2025 | RIVEROAKS_00108632 – RIVEROAKS_00114666 | 6,035 |
| Sep. 2, 2025 | RIVEROAKS_00114667 – RIVEROAKS_00114690 | 24 |
| Sep. 8, 2025 | RIVEROAKS_00114691 – RIVEROAKS_00145643 | 30,953 |

---

[1] On August 21, 2025, this Court extended the fact discovery deadline to October 31, 2025. (Dkt. 502).

| Sep. 19, 2025 | RIVEROAKS_00145644 – RIVEROAKS_00146247 | 604 |
|---|---|---|
| | **TOTAL** | **103,496** |

3.        Plaintiffs *__still__* have not completed their document production. At a hearing before Special Master Grossman on September 23, 2025, Plaintiffs asserted that their next document production would be their last and that it would be delivered to Defendants by the end of that week. Like prior discovery assurances from Plaintiffs, this never happened. As of the date of this filing, Defendants have not received any such production. The chart above shows that although Plaintiffs insisted their production was "all but complete" back in January 2025, they have since produced over 100,000 pages of some of the most important documents in this litigation after this Court entered the fact discovery deadline.  Many of these documents demonstrate the Simon Property internally valued River Oaks to be significantly more valuable than what Plaintiffs claimed to the Cook County Assessor, the Cook County Board of Review, in the Circuit Court of Cook County and in this litigation.  Most of these new documents, which Defendants have still not been able to review in their entirety, were produced starting on August 16, 2025, after or at best less than a week before Defendants deposed three key witnesses in the case: Juan Paz (the property tax manager for the subject property, River Oaks Mall, deposed on July 1, 2025 and July 18, 2025); Lisa Clements (another property tax manager for River Oaks Mall, deposed on July 22, 2025) and Michael Larson (the head of Simon Property's Property Tax Department, deposed on August 21, 2025). With the discovery deadline looming and no ruling on the pending motions to compel, Defendants had no choice but to press forward with depositions (as Plaintiffs have long insisted that they do) so as not to forfeit Defendants' ability to develop the record within the Court-ordered schedule.

4. Defendants therefore deposed key witnesses Juan Paz on July 1 and 18, 2025, and Lisa Clements on July 22, 2025. On August 18, 2025, the day before the deposition of Jodi Calisto and two days before the deposition of Michael Larson, Plaintiffs contacted Defendants to discuss the status of their document production and the upcoming Simon Property witness depositions. Plaintiffs acknowledged that they still had many more documents to produce based on deficiencies in the document search performed by their predecessor counsel at Dentons, and they proposed postponing the 12 depositions already noticed by Defendants, the same depositions Plaintiffs had previously claimed should have been taken earlier. Plaintiffs' stated concern was that their witnesses might otherwise have to testify twice—once on the initial production and again after the eventual supplemental productions. Although Defendants understood that concern, they were constrained by the Court's September 19, 2025, deadline. Many witnesses remained to be deposed and Defendants could not simply cancel all of the depositions because Plaintiffs chose to produce documents requested in February 2021, four years late, right before the deadline to complete depositions. Nevertheless, Defendants agreed to reschedule nearly all of the Simon Property witness depositions, but they could not defer the deposition of Mr. Larson. Plaintiffs, fully aware of the impending discovery deadline and that their production remained incomplete, nonetheless declared that they would present Mr. Larson only once and would strictly limit his deposition to seven hours, even after Plaintiffs had deposed some of Defendants' witnesses for well over seven hours. In short, Defendants were placed in the untenable position of proceeding with critical testimony under a compressed timetable and with an incomplete evidentiary record solely because Plaintiffs did not fulfill their discovery obligations since 2021.

5. On August 21, 2025, Plaintiffs presented Mr. Larson for his deposition. At the time, Plaintiffs had produced documents mentioning "Larson" totaling 1,278 pages in 2025 alone. After

exactly seven hours of testimony on the record, Plaintiffs' counsel invoked the seven-hour limit set forth in Rule 30(d)(1) and terminated the deposition notwithstanding Defendants' stated need for additional time to question the witness about several additional topics and documents. Since Mr. Larson's deposition, Plaintiffs have produced many new documents mentioning "Larson", totaling an additional 4,351 pages.

6.      Defendants have been diligently deposing witnesses in an effort to develop the record and meet the Court's deadlines. They deposed David Contis on September 4, 2025, Eric Fleck on September 8, 2025, Jodi Calisto on September 9, 2025, Karen Couch on September 10, 2025, Frank Lima on September 12, 2025, Ken Brown on September 15, 2025, and Brad Braemer on September 18 and 24, 2025. All of these depositions proceeded to meet this Court's fact discovery deadline, even though Plaintiffs' production still remains ongoing and incomplete.

7.      The timing of Plaintiffs' production has deprived Defendants of a meaningful opportunity to review the materials and question the relevant witnesses about them. Defendants should be granted leave to take a supplemental deposition of any witness based on productions made after their original deposition, and the fact discovery deadline should be extended to allow sufficient time for Defendants to review the new materials, meet and confer on the many remaining disputes that are being managed by the Special Master, and depose the witnesses regarding those additional materials.

## II.      LEGAL STANDARD

8.      Fed. R. Civ. P. 26(b)(1) states in relevant part that the scope of discovery is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

9. Fed. R. Civ. P. 26(b)(2)(A) states that, by order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. It "allows the parties to engage in broad, liberal discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Coleman v. Illinois*, No. 19C 3789, 2020 U.S. Dist. LEXIS 177020, at *8 (N.D. Ill. Sep. 25, 2020) (internal quotation omitted).

10. Similarly, pursuant to Fed. R. Civ. P. 30(a)(2)(A)(ii), a deponent may be deposed more than once with leave of court. Courts will grant such supplemental depositions in many situations, including where a witness previously deposed is to be deposed again concerning newly-produced documents that were not available to the inquiring party at the time. This was the case in *Borizov v. Olsen-Foxon*, where the court allowed the plaintiff to take a second deposition of a witness. No. 19 C 7549, 2023 U.S. Dist. LEXIS 47346, 10-11 (N.D. Ill. Mar. 21, 2023). The court explained that "plaintiff connects the content of certain documents belatedly received to additional relevant lines of inquiry they intend to explore with Officer Perez […]." *Id*. at 6. Thus, the court permitted further examination on various topics, including those "that relate to the newly produced documents not available during Officer Perez's initial deposition." *Id*. at 7.

### III. ARGUMENT

**A. Defendants Should Be Granted Leave To Depose Michael Larson For An Additional Seven Hours.**

11. Plaintiffs' strict enforcement of the seven-hour rule was not only hypocritical, but unreasonable as Mr. Larson's importance to this litigation cannot be overstated. From 2009 to the present, Mr. Larson has served as Sinon Property's Director of the Property Tax Department, a department within Simon Property dedicated to appealing property taxes on Simon's commercial properties to reduce Simon Property's taxes and increase their profits. Plaintiffs' core allegation

in this action is that the Cook County Assessor mishandled Plaintiffs' property tax appeals for several tax years from 2005-14 for the subject property, resulting in allegedly excessive assessments and damages. Mr. Larson supervised the appeal of property taxes at River Oaks Mall for a number of the tax years at issue (2010, 2011, 2012 and 2014) (See Aug. 21, 2025, Dep. Tran. of M. Larson, att. as Ex. 1 at 14:18–15:1), communicated regularly with the Property Tax Department regarding the property at issue in this litigation (Ex. 1 at 31:4–20), claimed to be an appraiser (Ex. 1 at 42:2–15), participated in valuations of the River Oaks Mall (Ex. 1 at 77:9–25), hired appraisers (Ex. 1 at 161:6–16), and either authored or received thousands of pages of relevant documents (See Sep. 8, 2025, Aff. to Special Master att. as Ex. 3 at 3).

12.    Plaintiff's Affidavit to the Special Master (the "Affidavit") makes this plain. In it, the Special Master required Plaintiffs to provide extensive information concerning the extent of their compliance with their discovery obligations, including "the name and department of each custodian whose ESI or hard-copy documents were searched in connection with this litigation, the approximate date of the search, precisely which ESI and/or hard-copy sources for that custodian were searched, and the date of the production containing that custodian's ESI or hard-copy documents" (See Aug. 26, 2025, e-mail from M. Grossman, att. hereto as Ex. 2). She also asked for a "list of any departments where custodian or non-custodial data sources were not searched, including, but not limited to, Leasing, Finance, Accounting, Lease Administration, Development, Budgeting, and Property Management" (*Id*.).

13.    Plaintiffs say in their Affidavit that they produced "multiple productions from August 2025 through September 2025" concerning Mr. Larson (Ex. 3 at 3). To be more precise, at the time Plaintiffs had made six document productions in August and September 2025, totaling 102,747 pages of material, 5,809 pages of which mention "Larson." Many of these documents

contain complex financial material that requires explanation from witnesses familiar with the documents in depositions. It is no surprise then that Mr. Larson is included on so many pages of Plaintiffs' still-ongoing document production. His valuation of River Oaks and strategy for lowering the property taxes at River Oaks over the course of several years lies at the heart of Plaintiffs' claims and Defendants' defenses. Defendants should be granted leave to take a supplemental deposition of Mr. Larson on this basis alone.

14. Defendants should also be granted additional time to depose Mr. Larson based on the additional documents produced only after he was deposed. Since Mr. Larson's deposition, Plaintiffs produced ***over 83,000 pages of documents*** in productions that took place in five batches on August 26, August 29, September 2, September 8, and September 19, 2025. Most of these documents were created by the Property Tax Department when Mr. Larson ran it. That is to say nothing of the nearly 19,000 pages of documents Plaintiffs produced on August 16, just five days before his deposition. Many of these documents reference "Larson" and, even if they do not, several of the documents relate to what he and his department did to try to artificially lower the property taxes for River Oaks. A digital search among all of these documents for "Larson" produced 1,041 hits on documents totaling 5,336 pages. Likewise, in the Affidavit Plaintiffs provided to the Special Master on September 8, 2025, Plaintiffs admit to making "Multiple productions from August 2025 through September 2025" pertaining to Mr. Larson. (Ex. 3 at 3). It would be unfair and prejudicial to prevent Defendants from deposing one of the central witnesses in this case about thousands of pages of documents that were requested in February 2021, but inexplicably produced only after Mr. Larson's deposition on August 21, 2025. That would effectively punish Defendants for Plaintiffs' insufficient searches and untimely document production.

15.     Moreover, the additional time being requested is proportional to the needs of this case. Plaintiffs seek recovery of over $50 million in tax refunds, interest and attorney's fees for alleged improper property tax assessment practices that occurred from 2005 through 2014. Seven hours to depose one of the witnesses who oversaw Simon's Property Tax Department was unreasonable, particularly given the volume of complex financial documents referencing him and his department, and an additional seven hours is proportional.

**B.      Defendants Should Be Granted Leave To Take A Supplemental Deposition Of Any Witness Based On Plaintiffs' Recent Supplemental Productions.**

16.     Defendants should likewise be granted leave to take a supplemental deposition of Juan Paz, Lisa Clements, Jodi Calisto, and every other witness already deposed based on the newly-produced documents. Plaintiffs' extremely-late production of over 100,000 pages of documents is entirely their fault. Defendants requested these materials in February 2021, filed several motions to obtain them beginning in 2021, prevailed on Plaintiffs' efforts to block all fair market value discovery before Judge Finnegan and Judge Tharp, and engaged in numerous meet and confers to try to get these key materials.

17.     For example, Plaintiffs produced Mr. Paz for deposition twice on July 1 and July 18, 2025. Mr. Paz, a long-time employee of Simon, served as a property tax manager within Plaintiffs' Property Tax Department for the River Oaks Mall from 2008 to 2016, and was responsible for valuing that property for purposes of tax appeals during several tax years at issue (2009, 2010, 2011, 2012 and 2014). Since his last deposition, Plaintiffs have produced over 100,000 pages of materials about the key issues in this case. These documents were spread over eight productions on July 28, August 1, 16, 26, and 29, and September 2, 8, and 19, 2025. A digital search within these productions for just the name "Paz" hit on 1,460 documents covering 12,618 pages. In their affidavit presented to Special Master Grossman, Plaintiffs similarly admit to making

"Multiple productions from August 2025 through September 2025" pertaining to Mr. Paz at the time (Ex. 3 at 3).

18. Defendants deposed Lisa Clements on July 22, 2025. Up until February 2009, she was a Senior Manager in Plaintiffs' Property Tax Department. She was responsible to valuing and appealing property taxes for River Oaks for tax years 2005, 2006, and 2008. She worked with Plaintiffs' outside counsel to submit data and appellate materials to those taxing authorities. After Ms. Clements was deposed, Plaintiffs produced over 103,000 pages of new materials. Plaintiffs explain in their Affidavit that "on September 8, 2025, Simon produced Ms. Clements' River Oaks-related emails," which included new analysis of the proper value of River Oaks (See Dec. 16, 2005 to Feb. 23, 2009 e-mails btwn. L. Clements et al., att. as Ex. 4). That September 8, 2025, production comprised 30,953 pages.

19. Plaintiffs produced Ms. Calisto for her deposition on September 9, 2025. She has been Plaintiffs' Regional Vice President of Financial Reporting since 2007, putting her in that position during multiple tax years at issue (2008, 2009, 2010, 2011, 2012 and 2014). In that role, Ms. Calisto received valuations of the River Oaks Mall and estimations of its projected tax liabilities to incorporate into Plaintiffs' financial reports, particularly from Mr. Paz. Plaintiffs produced two sets of documents just before her deposition on September 2 and 8, 2025. These two productions total over 30,000 pages of material. A digital search among documents for "Calisto" yielded 116 documents comprising 1,684 pages, all in the latter production which Defendants received the day before her deposition and while defense counsel was deposing another Simon witness in Indianapolis. Indeed, Plaintiffs admit in their affidavit to the Special Master that they produced documents pertaining to Ms. Calisto on September 8, 2025.

20. In its order of April 11, 2025, this Court ordered that "written discovery [must be] completed by 5/8/25" (Dkt. 461). In producing nearly 100,000 pages of materials over 10 productions between May and September 2025 Plaintiffs have effectively admitted that their document productions are not now, nor were they in January, "outside of [] housekeeping items, [] finished" (Dkt. 438 at 4:5–9). When Plaintiffs' counsel represented that only minor "housekeeping" remained for their written discovery responses, Plaintiffs had produced a total of approximately 42,903 pages of documents over five years of litigation (Simon0000001–152 and RIVEROAKS_00000001–42751). Since that time, Plaintiffs produced over 100,000 pages of new documents. Worse yet, given the Court's discovery deadline and Plaintiffs' delays, Defendants were forced to examine Mr. Larson, Mr. Paz, Ms. Calisto, Ms. Clements, and others before Plaintiffs chose to produce thousands of pages of key documents written by them, sent to them, and about their involvement in valuing River Oaks during the tax years at issue.

21. Again, Defendants' request to depose witnesses about documents Plaintiffs produced late, only after each witness' deposition, is directly proportional to the needs of the case. Plaintiffs seek to recover over $50 million in tax refunds, interest, and attorney's fees for alleged improper property tax assessment practices that occurred from 2005 through 2014. Preventing Defendants from ever deposing key witnesses about documents requested in 2021, but only produced in 2025, after those witnesses were deposed, would be unfairly prejudicial to Defendants and reward Plaintiffs for missing discovery deadlines and misrepresenting the true status of their document production to the Court repeatedly.

22. Thus, Defendants ask for an additional seven hours of deposition testimony from Mr. Larson, Mr. Paz, Ms. Clements, and Ms. Calisto so that they can be questioned about the many thousands of pages of financial documents produced after or shortly before their depositions.

Moreover, Defendants ask for the same relief with respect to any witness deposed where documents were produced after or less than two weeks before their depositions.

**C.     The Fact Discovery Deadline Must Be Extended Due To Plaintiffs' Late Production Of Over 100,000 Pages Of Documents And The Numerous Outstanding Discovery Disputes Caused By Plaintiffs' Late Productions.**

23.     On August 21, 2025, this Court *sua sponte* extended the fact discovery deadline to October 31, 2025. (Dkt. 502). Though Defendants appreciate the six-week extension of fact discovery and they have been working tirelessly to progress with discovery, the current discovery deadlines are still impossible to meet, particularly given nearly all of Plaintiffs' belated production starting on August 16, 2025. Defendants were therefore left with insufficient time to review over 100,000 pages of financial documents, identify those requiring meet-and-confer sessions or motions to compel (including challenges to Plaintiffs' repeated improper redactions and privilege claims on over 100 new documents that have never been put in a privilege log), and address outstanding issues from the earlier 42,000 pages produced – all while preparing for and taking depositions, often before Plaintiffs' have produced all documents pertaining to the deponents. That and Plaintiffs still have not produced a privilege log.

24.     Plaintiffs had years to produce these materials, but waited until after the written discovery deadline had passed and depositions had started to do so. Plaintiffs still have not produced all of the requested documents. These repeated last-minute productions severely prejudice Defendants. In particular, the timing of these supplemental productions has deprived Defendants of the ability to meaningfully review these materials and depose Plaintiffs' witnesses on their substance.

25.     Plaintiffs submitted an affidavit to Special Master Grossman outlining the efforts made to locate material responsive to the requests Defendants issued in February of 2021. Plaintiffs initially only searched seven custodians in October 2021: Michael Larson; Juan Paz; Melissa

Breeden; Lisa Clements; Frank Lima; Rod Vosper; and Donna Vosper (Ex. 3 at 3–5). Of those seven custodians, Plaintiffs located responsive documents for only three: Mr. Larson; Mr. Paz; and Ms. Breeden (*Id*. at 3), while the Affidavit claims that none were located for Ms. Clements, Mr. Lima, Mr. Vosper, or Ms. Vosper (*Id*. at 5). Plaintiffs did not expand their search to 13 other obvious custodians and repositories until 2025 (*Id.* at 3–5). Even now, eight of Plaintiffs' custodians and one non-custodial source are listed as "Review in progress" as of September 8, 2025, meaning their materials have not been fully produced (*Id*. at 14).

26.     Plaintiffs' Tenant Access Platform, CTI, L:Drive, I:Drive and Iron Mountain, some of the locations of relevant River Oaks data, were likewise only first searched in late 2023 or 2025 (Ex. 3). SharePoint, OneSource and F:Drive, which are central to property tax and finance issues for River Oaks, were not searched until July–August 2025.

27.     Particularly troubling is the fact that Plaintiffs searched the Lotus Notes accounts of Mr. Larson and Mr. Paz back in October 2021, and then re-searched those accounts in August 2025 (Ex. 3 at 3). Yet it was only beginning in 2024, and continuing to the present that Plaintiffs began producing materials from that source (*Id*.). This leaves Plaintiffs with only two explanations for their conduct: either they did not perform a thorough search back in October 2021, or they withheld whatever they found for nearly four years.

28.     The Affidavit lists marketing, mills and premium outlets as departments that were never searched (Ex. 3 at 6). Meanwhile, the leasing and property management department searches remain "in progress." Specialty leasing does not appear at all on Plaintiffs' Affidavit, notwithstanding testimony that it exists (See Sep. 9, 2025, Dep. Tran. of J. Calisto, att. as Ex. 5 at 284:21–285:7).

29.     After deposing a number of current and former Plaintiffs' employees, Defendants have learned of major gaps in Plaintiffs' document searches. Eric Fleck, a financial analyst at Simon Property who worked on the subject property in this case, was deposed on September 8, 2025, and confirmed that several non-custodial sources were never searched. Specifically, he testified about the existence of several non-custodial databases containing relevant financial and operational data for River Oaks, including Yardi, JD Edwards and DYNA (See Sep. 8, 2025, Dep. Tran. of E. Fleck, att. as Ex. 6 at 32:24–33:7; 35:15–36:5; 114:3–23). Yet none of these databases and software are referenced in Plaintiffs' Affidavit, and there is no indication that Plaintiffs have taken any steps to preserve or collect data from these sources.

30.     Jodi Calisto confirmed that Simon's finance department has used Yardi, Guru, and JD Edwards to maintain budgets and financial information for River Oaks (Ex. 5 at 201:13–21; 22:18–5:19; 196:17–24). Plaintiffs' Affidavit does not indicate that those sources were searched.

31.     Karen Couch, an analyst in Simon's Property Tax Department deposed on September 10, 2025, testified to further deficiencies. She stated that Simon Property's software e-Property Tax generated documents with critical financial information that was used by the Property Tax Department to calculate valuation information. However, the Affidavit never identifies e-Property Tax as being searched or even existing.

32.     Ken Brown, the Property Manager of River Oaks, testified during his deposition on September 15, 2025, that numerous databases had not been searched or materials not produced as identified in the Affidavit to the Special Master (Ex. 3). For example, Mr. Brown said that he received annual reports from a software called "Guru", which would summarize River Oaks' annual budgets and include forecasts on rents, expenses and property taxes. Mr. Brown also mentioned Plaintiffs' "Anaplan" software which may contain budget information for River Oaks.

Several departments were not even mentioned in the Affidavit according to Mr. Brown, including but not limited to Information Services, Internal Audit, Short-Term Leasing, and Long-Term Leasing.

33.    Frank Lima, former head of the Property Tax Department at Simon, testified on September 12, 2025, concerning annual budget meetings and binders used and distributed by David Simon, the CEO of Simon Property Group (See Sep. 12, 2025, Dep. Tran. of F. Lima, att. as Ex. 7 at 60:12–61:22). Such binders included data about every property Simon owned, including River Oaks, yet the pages from those key binders on that property have not been produced. Mr. Lima also testified as to annual meetings in July with Barbara Johnson to advise Simon's budget committee (Ex. 7 at 337:12–340:7). Materials about those meetings have not been produced either.

34.    Based on the foregoing, the supplemental productions are incomplete and multiple discovery issues must be resolved before expert discovery proceeds. The discovery deadline should be extended to allow Defendants adequate time to review the new materials, identify and resolve any remaining disputes, and depose the relevant witnesses regarding those documents.[2]

### V.    PRAYER FOR RELIEF

35.    Defendants seek an order granting them leave to: (a) continue the deposition of Mr. Larson for an additional seven hours of testimony; (b) take a supplemental deposition of any witness on documents produced after their deposition for an additional five hours of testimony; (c) requiring Plaintiffs to produce Mr. Larson and every other witness whose supplemental deposition is sought on a mutually convenient date within 60 days of the Court's order; and (d) awarding any further relief the Court deems just and proper.

---

[2] This Court noted in its August 21, 2025 minute order (Dkt. 501) that the amended discovery schedule "uses up any flexibility that remained in the schedule." Defendants have filed a Motion to Continue the Trial Date contemporaneously with this Motion.

Dated: September 30, 2025

Respectfully submitted,

*/s/Daniel J. Cozzi*

*/s/Katherine G. Schnake*

Daniel J. Cozzi (ARDC #6303107)
Brittany C. Dushman (ARDC #6349022)
E. Tripp Burton (ARDC #6348840)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
Ph: (312) 321-9100

Steven M. Puiszis
spuiszis@hinshawlaw.com
Katherine G. Schnake
kschnake@hinshawlaw.com
Matthew L. Pagano
mpagano@hinshawlaw.com
Hinshaw & Culbertson LLP
151 North Franklin, Suite 2500
Chicago, IL 60606
Ph: (312) 704-3000

*Counsel for Defendants Maria Pappas
and the County of Cook*

*Counsels for the Cook County Assessor*

**Rule 37.2 Certificate**

Counsel for the Defendants certifies that they conducted good faith discovery conferences with counsel for Plaintiffs and were unable to reach an accord, thereby satisfying their obligations under Rule 37.2 with respect to each of the issues raised in the Defendants' instant Motion. Counsel for the Defendants' attempts at conference occurred on the following dates:

1. **August 21, 2025:** Counsel for the Assessor conferred in person with Plaintiffs' counsel at Michael Larson's deposition about deposing him for more than seven hours given how many documents had been produced concerning Mr. Larson. Plaintiffs' counsel refused.

2. **September 10, 2025:** Counsel for Defendants conferred with Plaintiffs' counsel in person and in a good-faith attempt to resolve the disputes herein without court action. Plaintiffs maintained their refusal to reopen the deposition of Mr. Larson, or to re-depose Mr. Larson, Mr. Paz, Ms. Calisto, Ms. Clements, or any other witness.

3. **September 20, 2025:** Counsel for the County and Treasurer sent an e-mail to Plaintiffs' counsel asking if Plaintiffs' document productions were complete. At a hearing before Special Master Grossman on September 23, 2025, Plaintiffs' counsel asserted that their next production would be their last and that it would be delivered to Defendants by the end of that week, though to date no such production has been received.

Despite the parties' efforts to confer in good faith, they are unable to reach an accord regarding the discovery disputes enumerated in the Defendants' instant Motion.

Dated: September 30, 2025                          Respectfully submitted,

*/s/Daniel J. Cozzi*                                      */s/Katherine G. Schnake*

Daniel J. Cozzi (ARDC #6303107)              Steven M. Puiszis
Brittany C. Dushman (ARDC #6349022)          spuiszis@hinshawlaw.com
E. Tripp Burton (ARDC #6348840)              Katherine G. Schnake
SWANSON, MARTIN & BELL, LLP                   kschnake@hinshawlaw.com
330 North Wabash, Suite 3300                  Matthew L. Pagano
Chicago, IL 60611                             mpagano@hinshawlaw.com
Ph: (312) 321-9100                            Hinshaw & Culbertson LLP
                                              151 North Franklin, Suite 2500
*Counsel for Defendants Maria Pappas*          Chicago, IL 60606
*and the County of Cook*                       Ph: (312) 704-3000

                                              *Counsels for the Cook County Assessor*