UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

A.F. MOORE & ASSOCIATES, INC.;
J. EMIL ANDERSON & SON, INC.;
ERLING EIDE;
FOX VALLEY/RIVER OAKS PARTNERSHIP; and
SIMON PROPERTY GROUP (DELAWARE), INC.,

No. 18 CV 4888

*Plaintiffs,*

v.

Judge John J. Tharp Jr.

MARIA PAPPAS, Cook County Treasurer and
  Ex Officio County Collector;
FRITZ KAEGI, Cook County Assessor; and
COUNTY OF COOK,

Magistrate Judge
  Daniel P. McLaughlin

*Defendants.*

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT
MOTION FOR LEAVE TO CONTINUE THE DEPOSITION
OF MICHAEL LARSON, LEAVE TO TAKE A SUPPLEMENTAL
DEPOSITION OF ANY WITNESS BASED ON NEWLY-PRODUCED
<u>MATERIALS, AND FOR EXTENSION OF DISCOVERY DEADLINES</u>**

Plaintiffs Fox Valley/River Oaks Partnership and Simon Property Group (Delaware), Inc. (collectively, "Plaintiffs" or the "Simon Plaintiffs"), through their undersigned attorneys, respectfully submit this response in opposition to the motion to continue depositions and extend the discovery deadline filed jointly by Defendants Maria Pappas and County of Cook (collectively, the "County Defendants") and Fritz Kaegi (the "Assessor"). Dkt. 510. In support, the Plaintiffs state as follows:

## Introduction

Defendants spent four-plus years in this case *not* taking depositions, and now, at the last minute, they ask the Court for leave to take every deposition twice. They chose to wait until July 2025—weeks after the close of written discovery—to take their first one. Then, contrary to their earlier representations to Plaintiffs that they were done issuing document requests, Defendants used that very first deposition as an excuse to issue a barrage of "follow-up" document requests (almost all of which were untimely requests for new documents that Defendants had left out of their timely Rule 34 requests) and demands for new custodial collections. To avoid disputes, Plaintiffs cooperated with most of those requests. Now, Defendants seek to leverage Plaintiffs' cooperation and the resulting document productions as an excuse to delay the case and re-take every single deposition. In other words, Defendants used their own choice to delay depositions to secure a *de facto* extension of document discovery, and now they want to parlay Plaintiffs' cooperation into an extension of the deposition deadline—and ultimately, of the trial date. This is pure tactical gamesmanship, and the Court should reject it.

The Court should also deny Defendants' motion because Defendants do not

demonstrate good cause to reopen the deposition of Michael Larson or any other witness. Extending depositions beyond seven hours requires good cause, and counsel's desire to ask a witness more questions about more documents that cover old ground is not "good cause." *Apollo v. Stasinopolous*, No. 18 C 6475, 2021 U.S. Dist. LEXIS 72080, *7 (N.D. Ill. Apr. 14, 2021) (the "wish to develop further areas of inquiry—or explore in greater depth those that were touched upon" is not good cause). Every lawyer wants that in every complex case, but "[t]he 7-hour rule necessitates, especially in complex cases, that almost all depositions will be under-inclusive." *In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 532 (N.D. Ill. 2005) (*"Sulfiric Acid I"*). Defendants do not point to any new subject matter that they did not have a chance to ask about earlier, nor do they explain why the upcoming Rule 30(b)(6) depositions of Plaintiffs will not suffice to discuss any recently produced documents. Defendants seem to want to take serial depositions only to drag this case out as far as possible.

The deposition of Mr. Larson exemplifies Defendants' approach. Before that deposition, Plaintiffs advised Defendants that additional document production related to Mr. Larson was forthcoming, and asked to postpone Mr. Larson's deposition so that the production could be completed first—*i.e.*, to avoid the very problem Plaintiffs complain of now. Plaintiffs also said that if Defendants wished to depose Mr. Larson despite the fact that additional documents were forthcoming, they would not agree to put Mr. Larson up a second time. Defendants chose to go ahead with Mr. Larson's deposition anyway, on the apparent assumption that they could re-depose him regardless. They cannot. "Additional time is not available for the asking." *Apollo*,

2021 U.S. Dist. LEXIS 72080 at *4. Defendants offer no real justification for their request—instead, they merely point to the number of documents produced in August and September, and argue that this gives them *carte blanche* to re-depose everyone. But courts do not allow such broad relief based on such a thin showing. Indeed, the Argument section of Defendants' motion cites no case law at all.

What is more, the late production of the documents that Defendants complain about has been driven by Defendants' own tactical choices. *Nine months ago*, Plaintiffs suggested that Defendants should at least *start* taking depositions and, if they believed it was necessary based on subsequent written discovery responses, they could ask to continue those initial depositions. Dkt. 438 at 8:12-22. This would have allowed Defendants to explore additional document sources in a records-focused deposition, with ample time in the schedule to serve timely follow-up document requests based on that deposition and resolve disputes like this one. But Defendants made the deliberate tactical choice not to do that.

Instead, Defendants delayed taking a single deposition until July, after written discovery closed, and did not raise any substantial issues with Plaintiffs' document production before written discovery closed. They then turned on a dime and started issuing untimely demands for documents and more custodians. As Magistrate Judge Cole explained in an analogous case, even in complex litigation these types of "tactical decisions" have consequences and should not be rewarded:

> Acceptance of the [movants]' prejudice argument would absolve the [movants] of responsibility for their own inaction, would extend discovery, and would precipitate a further round of depositions at which the withheld

> information could be used. This would result in a nullification of the seven-hour limitation on depositions in the Federal Rules of Civil Procedure and a likely claim that leads stemming from the depositions required even more discovery. Sophisticated or oblique, no less than stark, methods of nullification of discovery cut-offs and evasion of the Rules (whether or not intended) are prohibited.

*In re Sulfuric Acid Litig.*, 231 F.R.D. 331, 340-341 (N.D. Ill. 2005) ("*Sulfuric Acid II*").

Here, too, Defendants should be "stuck with the consequences" of their decision. *Id.*

**Factual Background**

**I.      Plaintiffs Respond to Defendants' Written Discovery Requests.**

When the Simon Plaintiffs' undersigned law firm substituted into this case in late 2023, they began to work cooperatively with Defendants to move the case forward by cutting through the discovery disputes that had bogged this case down.[1] To that end, the Simon Plaintiffs began producing fair market value discovery shortly after that substitution. The Simon Plaintiffs ultimately produced thousands of documents responsive to the Defendants' timely requests for production of documents ("RFPs"), including those targeting the fair market value of the Simon Plaintiffs' property (River Oaks Mall), by the end of 2024. *See* Ex. 1 at 2-5 (summarizing history of Simon Plaintiffs' discovery efforts).

During the course of the Simon Plaintiffs' cooperative work with Defendants on this issue, the Simon Plaintiffs worked to reach agreement on dozens of RFPs and continuously supplemented their RFP responses at Defendants' requests—indeed,

---

[1]      Plaintiffs refer to themselves as the "Simon Plaintiffs" in portions of the factual background section to avoid confusion with the other, separately represented former plaintiffs who have since voluntarily dismissed their claims.

the Simon Plaintiffs' most recent supplemental response to the County Defendants' RFPs, served on February 8, 2025, was their *seventh* such response. *See* Ex. 2. That response detailed the outcomes of the parties' meet-and-confers on each RFP, and told the County Defendants exactly how the Simon Plaintiffs would and would not respond.[2]

Prior to the close of written discovery, Defendants led the Simon Plaintiffs to believe that these responses were satisfactory and that there were no issues to be resolved with the Simon Plaintiffs' document production. Indeed, as early as a meet-and-confer held on July 12, 2024, counsel for the County Defendants stated that they were not planning to issue any more document requests or other written discovery.

## II.    The Court Sets a Schedule and Defendants Delay Depositions.

On January 13, 2025, as the written discovery process was by all appearances approaching its end, the parties appeared at a status conference with Judge Tharp. *See* Dkt. 438 (transcript). The County Defendants' counsel acknowledged that they had been "working very well" with the Simon Plaintiffs' counsel and would be "following up" on just "some written discovery" issues with respect to the Simon Plaintiffs. They indicated that the *other* plaintiffs still owed substantial written

---

[2]    For example, in response to RFP No. 90, in which the County Defendants sought information regarding "quarterly valuations or asset management appraisal valuations" of the River Oaks Mall—which was their only timely RFP aimed at the fair market v of the mall—the Simon Plaintiffs (1) conferred with the County Defendants to understand what they meant by those terms, (2) informed them that "periodic valuations" of the sort meant by the County Defendants were not performed, (3) agreed to perform a "reasonable search" for "documents relating to other valuations" of the River Oaks Mall, and then (4) identified hundreds of such documents in their productions. *Id.* at 134-138; *see also* Ex. 1 at 2-3.

discovery responses, but not the Simon Plaintiffs. *Id.* at 8:12-22. The Simon Plaintiffs'

counsel noted the following:

> The defendants have had the opportunity, four years, as Mr. Cozzi pointed out, to ask for depositions. They haven't had any restriction on them asking for depositions, asking to take other discovery. And if the reason why they didn't get complete answers from their perspective to deposition questions was because they didn't have all the written discovery, they always were permitted to ask for depositions again, to come to Your Honor, to come to Judge Finnegan, now Judge McLaughlin, and ask for a request to take those depositions again. They haven't done any of that.

*Id.* at 10:23-11:7. In other words, the Simon Plaintiffs' counsel suggested ***in January***

***2025*** that Defendants should start taking depositions right away and, if they later

decided written discovery responses had been inadequate, they could come back and

ask to take some of those depositions again. But Defendants chose not to do that.

In a February 20, 2025 meet-and-confer, Defendants' counsel informed the

Simon Plaintiffs' counsel that the remaining "written discovery" issues that the

County Defendants alluded to during the January 13 hearing related to the Simon

Plaintiffs' privilege log and supplemental interrogatory responses. That turned out to

be untrue, as the County Defendants later decided to serve additional interrogatories

and document requests in April 2025, and to identify other purported deficiencies.

*See* Dkt. 477 (May 22, 2025 joint status report) ¶ 3. But of those purported

deficiencies, only two concerned the Simon Plaintiffs' document production, and

neither of those document issues concerned very many documents. *Id.* ¶ 3.d-e. Neither

had anything to do with the fair market value of the River Oaks Mall; unlike the

other plaintiffs, the Simon Plaintiffs had produced their thousands of "fair market

value" documents long ago.

Following the withdrawal of the other plaintiffs from the case and the remaining parties' submissions of competing scheduling proposals, the parties attended a hearing before Magistrate Judge McLaughlin on April 8, 2025 to discuss the schedule. Dkt. 480 (transcript). Defendants did not indicate that they had any more written discovery or document requests to issue, and did not claim that the Simon Plaintiffs' document production was incomplete. *Id.* Following the hearing, the Court set a schedule that included the close of written discovery on May 8, 2025. Dkt. 481. The close of fact discovery and depositions was set for September 19, 2025. *Id.*

At that point, Defendants had four weeks left before the close of written discovery. They chose not to take any depositions of the Simon Plaintiffs' document custodians or inquire about their document production or custodians during that time. Instead, they allowed the written discovery deadline to pass, and took their first deposition on July 1, 2025—seven weeks after written discovery closed. That deposition was of Juan Paz, the property tax manager primarily responsible for overseeing the Plaintiffs' tax appeals for River Oaks. Defendants asked for additional time to depose Mr. Paz, and Plaintiffs agreed to allow several more hours in addition to the first full day (which itself lasted more than the seven hours allotted by Rule 30(d)(1)). Mr. Paz's deposition concluded on July 18, 2025.

III. **Defendants Serve a Barrage of Untimely Document Requests, and Plaintiffs Nevertheless Cooperate in Good Faith.**

Almost immediately after Mr. Paz's deposition, Defendants unleashed a series of new document requests. These were led by a request for 19 categories of documents

following Mr. Paz's deposition—*i.e.*, following the first deposition Defendants took in this case. Most of these were new requests unrelated to any of Defendants' timely RFPs. Plaintiffs repeatedly asked Defendants to identify how the new documents sought related back to Defendants' RFPs, and Defendants consistently refused.[3] *See* Ex. 3 (July 21, 2025 letter to County Defendants). Defendants' next deposition, of Mr. Paz's predecessor Lisa Clements on July 22, 2025, was soon followed by a similar new set of demands for supplemental documents and non-custodial searches.

Nevertheless, in a good-faith effort to cooperate in discovery, Plaintiffs agreed to respond to these supplemental requests and began producing additional documents at the end of July. *Id.*; *see also* Dkt. 510 at 2. A minority of the supplemental document demands asked for "all responsive documents" (which Plaintiffs took to mean all documents responsive to *timely* RFPs) from a set of custodial and non-custodial sources that Defendants had never before asked Plaintiffs to search.[4] *E.g.*, Ex. 3 at items 8, 10, and 11.

Prior to this point—and prior to the close of written discovery—Defendants had ***never*** expressed an interest in what custodial and non-custodial sources Plaintiffs searched. Indeed, Defendants had never even inquired, and Plaintiffs

---

[3]     Defendants refused to ever say how these requests related back to their timely RFPs, despite repeatedly accusing Plaintiffs of violating Rules 26 and 34 by withholding responsive documents, and filing multiple motions to compel based on the same arguments.

[4]     Despite not adequately meeting and conferring with Plaintiffs on these supplemental requests, Defendants ultimately indicated that they wanted Plaintiffs to search a specific broader set of custodians than Plaintiffs had originally searched, and Defendants ultimately filed a motion on that point, which the Court referred to the Special Master. Dkt. 488.

focused their reasonable search efforts on the sources most likely to have responsive documents. *See* Dkt. 493 at 4-5. Again, however, in a good-faith effort to cooperate, and despite the untimeliness of Defendants' new demands, Plaintiffs agreed to conduct supplemental searches of a substantial list of additional custodial and non-custodial sources newly listed by Defendants. *See* Dkt. 510-3 at Exs. 1 and 2 thereto. Plaintiffs then undertook—at significant cost and expense—the task of collecting and reviewing documents from these sources. This production was substantially complete by early September, with most completed in August. Dkt. 510 at 2.

## IV. Defendants Proceed with the Larson Deposition Amidst the Supplemental Document Production.

After Plaintiffs agreed to the new custodial searches, the parties met and conferred and agreed to a short postponement of Plaintiffs' pending depositions while the new searches and productions unfolded. *See* Ex. 4. Plaintiffs also acceded to Defendants' request for an extension of fact discovery to accommodate the longer deposition schedule. *Id.*; *see also* Dkt. 502 (extending fact discovery deadline).

But despite agreeing to delay all other pending depositions, Defendants insisted on going ahead with Michael Larson's deposition, which had been previously scheduled for August 21, 2025. Defendants explained that they "ha[d] a lot of material to go through for his deposition based on what has already been produced and [we] think it would be more efficient to get started with him." Ex. 4. Plaintiffs' counsel responded by explaining that "additional documents" would be forthcoming and that if Defendants chose to proceed with Larson's deposition, Plaintiffs would "insist on following Rule 30(d)(1); we aren't going to agree to a second deposition day for

Larson." *Id.* Defendants chose to proceed with Mr. Larson's deposition as scheduled.

**V.      Defendants Depose Larson and Plaintiffs' Other Fact Witnesses.**

On August 21, 2025, Defendants took Mr. Larson's full-day deposition.[5] The transcript, which Defendants attach to their motion in full, shows that they questioned Mr. Larson at length about the material issues he knows about: Plaintiffs' internal property appraisals, estimates, and valuations of the River Oaks Mall (Dkt. 510-1 at 64-70, 124-128, 197-207, 214-223, 229-234, 262-277, 294-309, 314-322); Plaintiffs' decisions to file tax appeals for the years at issue and tracking of those appeals (*id.* at 74-78, 188-192); Plaintiffs' tax forecasting and budgeting (*id.* at 25-26, 182-185); training and procedures in Mr. Larson's department (*id.* at 78-80 and 106-112); tenant tax recoveries (*id.* at 90-94, 98-106, 185-186, 237-253); the difference between "fee simple" and "leased fee" value (*id.* at 253-261); meetings between Plaintiffs' representatives and Cook County tax officials (*id.* at 209-212); and much more. Defendants marked *34* exhibits to review with Mr. Larson in their seven hours, and got to 24 of them. *Id.* at 3-4.

After Mr. Larson's deposition, the fact depositions of Plaintiffs' other witnesses proceeded after the bulk of Plaintiffs' supplemental document production had been completed. Most of these depositions lasted all or nearly all of the seven hours allotted by Rule 30(d)(1). Defendants incorporated recently produced documents into their

---

[5]      As the time approached 8:00 p.m., when the deposition had already run over seven hours, the County Defendants' counsel indicated that he needed "45 minutes" more to finish the deposition. Plaintiffs' counsel agreed to allow 15 more minutes, and Defendants' counsel opted to stop asking questions and move to compel. *Id.* at 325:22-329:18.

exhibit sets for each of these depositions.

**VI.    The Upcoming Rule 30(b)(6) Depositions of Plaintiffs.**

The parties timely exchanged Rule 30(b)(6) notices on the schedule set by the Court (Dkt. 461) and have met and conferred numerous times regarding the topics for Defendants' Rule 30(b)(6) deposition of Plaintiffs. Defendants' notice contained 56 topics. Ex. 5 (Rule 30(b)(6) notice). Following the narrowing of many of the topics during the parties' meet-and-confers, Plaintiffs have agreed to present witnesses or provide stipulations on nearly all of these topics. Ex. 6 (October 3, 2025 letter). The majority of the topics will be handled by Mr. Paz, a Simon property tax manager who reports directly to Mr. Larson and handled the River Oaks Mall's property tax appeals in most of the tax years at issue. *Id.* at 9. These depositions are tentatively scheduled for the first week of November.[6]

## Legal Standard

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). "Additional time is not available for the asking." *Apollo*, 2021 U.S. Dist. LEXIS 72080, at *4. Rather, the Court has discretion to determine that additional time will be allowed for "good cause," which requires a showing by Defendants that more time is "needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the

---

[6]    Mr. Paz's 30(b)(6) deposition was scheduled for October 17. At the request of counsel for the County Defendants, who has a trial in late October, the Plaintiffs agreed to postpone the deposition. The parties have agreed that this slight, mutually agreed extension of the deposition schedule for the convenience of defense counsel will not affect other deadlines and will not be used by any of the parties to seek any other extensions.

examination." *Id.*; *see also* Fed. R. Civ. P. 30(d)(1). "[T]hat defendants wish to develop further areas of inquiry—or explore in greater depth those that were touched upon— is not 'good cause' to reopen a deposition." *Apollo*, 2021 U.S. Dist. LEXIS 72080, at *7. Rather, "good cause" in this context means, for example, "genuine surprise despite due diligence" when new issues arise after a deposition. *Salgado v. Student Loan Sols.*, No. 20 C 1878, 2020 U.S. Dist. LEXIS 228046, at *1 (N.D. Ill. Dec. 4, 2020).

## Argument

### I. There Is No Good Cause for Additional Deposition Time.

Defendants do not explain in their motion what, exactly, they need more time to ask any deponents *about*, and their motion should be denied for that reason alone.[7] Defendants make no effort to identify a single new "relevant line of inquiry they intend to explore" with Mr. Larson or any other witness. *Borizov v. Olsen-Foxon*, No. 19 C 7549, 2023 U.S. Dist. LEXIS 47346, *6 (N.D. Ill. March 21, 2023). To the extent that Plaintiffs' recent document production was responsive to Defendants' timely RFPs at all (which it largely was not, *see* Ex. 3 and Ex. 7 (Oct. 10, 2025 letter to Special Master Grossman)), Defendants do not explain how those documents anything but cumulative of the "fair market value" documents that Plaintiffs produced long ago. The desire to "explore in greater depth" topics that were already covered with a witness, even with additional documents, is not good cause to set aside the seven-hour limit for that witness. *Apollo*, 2021 U.S. Dist. LEXIS 72080 at *7; *see*

---

[7] Nor should Defendants be permitted to cure this defect in their reply brief, which would deprive Plaintiffs of the opportunity to respond. *Sulfuric Acid I.*, 230 F.R.D. at 533 (arguments raised in reply brief regarding reopening deposition were waived).

*also CW v. Textron, Inc.*, No. 3:10-cv-87, 2012 U.S. Dist. LEXIS 205767, *5 (N.D. Ind. July 19, 2012) (party "may not use an additional deposition to rehash old topics").

Indeed, as to Mr. Larson in particular, Defendants ***knowingly*** went into his deposition before Plaintiffs produced additional documents related to the witness. Plaintiffs told Defendants in advance that this would be the case, and offered to delay the deposition, but Defendants declined, stating that it was "more efficient to get started" with Mr. Larson without those documents. Ex. 4. Plaintiffs' counsel warned that there would be no second day with Mr. Larson, but Defendants went ahead anyway. For Defendants to argue now that they were unfairly prevented from asking Mr. Larson about any later-produced documents is preposterous. They made their choice, and are "stuck with the consequences." *Sulfuric Acid II*, 231 F.R.D. at 340.

Defendants act as if the mere volume of documents Plaintiffs have recently produced—which Plaintiffs only produced pursuant to Defendants' belated follow-up requests—constitutes good cause on its own. It does not. Especially in complex cases, "almost all depositions will be under-inclusive" because it is simply not possible to ask every possibly relevant document. *Sulfuric Acid I*, 230 F.R.D. at 532 (denying request for additional deposition time). To justify more time with witnesses, Defendants must do more than merely say that there are a lot of documents in this case—there are always a lot of documents. They must spell out the "additional relevant lines of inquiry they intend to explore" with these documents, and explain why that is not cumulative of what they already explored. *Id.*; *Borizov*, 2023 U.S. Dist. LEXIS 47346 at *6. They do not do that, so their motion must be denied.

Moreover, Defendants make no attempt to explain why the upcoming Rule 30(b)(6) depositions of Plaintiffs will not suffice to cover recently produced documents. *See* Exs. 5 and 6. Plaintiffs reviewed and produced these documents in a matter of weeks, and there is no reason Defendants could not do the same to prepare for questioning at the Rule 30(b)(6) depositions, which eliminates the need for individual depositions of Mr. Larson and others on these documents.

## II.  Defendants' Lack of Diligence Requires Denial of Their Motion.

The Court should also exercise its discretion to deny the motion based on how prejudicially late Defendants' requests come. "The volume of the last-minute discovery [Defendants] seek is staggering," as it effectively allows them to re-take every single deposition of Plaintiffs. *See Ross v. Gossett*, No. 3:15-CV-309, *16 (S.D. Ill. Feb. 18, 2021) (denying last-minute request for additional depositions). The impetus for the supplemental document productions at issue was Defendants' *own* untimely requests for more documents and custodians. All of those issues were raised (and motions filed) *after the close of written discovery*, making them untimely as a matter of law. *See Sulfuric Acid II*, 231 F.R.D. at 338-341 (denying motion to compel as untimely when filed after end of written discovery period); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001) (affirming denial of untimely motion to compel); *see also Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2024 U.S. Dist. LEXIS 179065, *7 (N.D. Cal. Oct. 1, 2024) ("[Movants] raised this issue with the Court too late. Identifying document custodians is supposed to be one of the first things litigants do in discovery, not one of the last.").

In short, Defendants could and should have brought these issues to a head long

ago, by taking a document deposition early on (or simply by being more diligent about their own newfound desire for more custodians). Indeed, Plaintiffs all but begged them to do that, to avoid this outcome. Dkt. 438 at 10:23-11:7. The Court should not permit Defendants to prejudice Plaintiffs—by delaying this already-delayed case further, duplicating all of the depositions taken so far, and perhaps upsetting the Court's carefully crafted trial schedule—simply because Defendants chose a deposition strategy that was likely to lead to last-minute scrambles.[8] *See Sulfuric Acid I*, 230 F.R.D. at 532-533 (denying motion for added deposition time as untimely); *Sulfuric Acid II*, 231 F.R.D. at 340-341 (parties who chose not to file timely motions were "stuck with the consequences" of unavailable documents at depositions).

## III.    There Is No Good Cause to Extend Discovery.

Because there is no good cause for any of the requested deposition continuances, there is no good cause for the Court to extend the discovery period beyond the first week of November (which the parties have already agreed will accommodate Plaintiffs' 30(b)(6) depositions). What issues remain from Defendants' endless follow-up requests after depositions are either moot or plainly beyond the bounds of anything requested during the written discovery period, and those facts are fully briefed before the Special Master. *See* Exs. 1 and 7.

### <u>Conclusion</u>

For these reasons, Plaintiffs request that this Court deny Defendants' motion.

---

[8] The Defendants state in their motion that they are filing a separate motion to continue the trial date, but they have not yet done so. Because the trial date is over one year away and fact discovery is nearly finished, there is no reason to continue the trial date.

Respectfully submitted,

James T. Smith
Samuel M. Ventresca
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103
(215) 569-5500
Jim.Smith@BlankRome.com
Samuel.Ventresca@BlankRome.com

*s/ Andrew Schrag*
Paul H. Tzur
Andrew Schrag
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
(312) 776-2600
Paul.Tzur@BlankRome.com
Andy.Schrag@BlankRome.com

*Attorneys for Plaintiffs*
*Fox Valley/River Oaks Partnership and*
*Simon Property Group (Delaware), Inc.*