

One Logan Square

130 North 18th Street | Philadelphia, PA 19103

**Phone:** **215-569-5625**

**Fax:** **215-689-3866**

**Email:** **samuel.ventresca@blankrome.com**

October 10, 2025

**VIA EMAIL**

Professor Maura R. Grossman, JD, PhD

229 Corrie Crescent

Waterloo, Ontario N2L 5W3

Canada

maura.grossman@uwaterloo.ca

> **RE:** ***A.F. Moore & Assocs., Inc. et al. v. Pappas et al.,***
> **No. 18 CV 4888**

Dear Professor Grossman:

We write on behalf of Plaintiffs Fox Valley/River Oaks Partnership and Simon Property Group (Delaware), Inc. (collectively, "Plaintiffs" or "Simon") in response to the Defendants' letter to the Special Master dated October 1, 2025, which contains a "task list" of supplemental discovery that the Defendants seek from the Plaintiffs. We respond to each of these items in the table below.

| Task | Response |
|---|---|
| 1. "Provide available dates for a Rule 30(b)(6) deposition of plaintiffs' IT representative on information systems, document migrations, document retention and discovery searches in this litigation" | In their Rule 30(b)(6) notice issued to Simon on June 27, 2025, the Defendants already included a topic that seeks information about "maintaining, retaining, backing up, archiving, deleting and destroying the type of documents and records, including electronically stored information such as e-mail correspondence, requested by defendants in written discovery to the plaintiffs in this matter" (Topic No. 23). Simon previously agreed to designate a witness on that topic. Additionally, Simon produced the Affidavit dated September 8, 2025 (the "Affidavit"), which provides details regarding Simon's search efforts in discovery and satisfies that aspect of the proposed topic. |

| | | To the extent that the Defendants seek information about "document migrations" beyond what is encompassed in Topic No. 23, Simon does not object to incorporating this into Topic No. 23 but needs specificity as to the specific migrations the Defendants intend to ask about so that the designee can be adequately prepared.<br><br>With respect to the date for this deposition, the Plaintiffs propose October 28, 2025. |
|---|---|---|
| 2. | "River Oaks pages from David Simon's annual budget meeting binders from 2002-16" | The Plaintiffs agree to produce these pages to the extent that they still exist. The Plaintiffs are in the process of searching for the documents and will provide an update to the Defendants as soon as possible. |
| 3. | "Finish all searches identified as 'in progress' in plaintiffs' September 8, 2025 affidavit" | On October 1, 2025, the Plaintiffs informed the Defendants that their document production was complete, subject to any supplemental documents that may be produced as the Plaintiffs finalize their privilege review and update their log. As previously discussed with the Special Master, the Plaintiffs will update their privilege log by October 30, 2025. |
| 4. | "Search and produce materials from Guru, JD Edwards, eProperty Tax, DYNA, CTI, ENGIE, Intranet, Anaplan, SSLE and Access" | • **Guru**: This system does not house any documents but contains year-end data for River Oaks spanning from 2012 through 2015. This data is able to be exported into a report for each of those years. While the Plaintiffs do not believe they should have to create new documents given the fact that these would not have been created in the ordinary course of business, the Plaintiffs are willing to produce this data in a good-faith effort to resolve any discovery disputes and complete document discovery. The Plaintiffs are in the process of exporting the year-end data and anticipate producing those reports next week.<br><br>• **JD Edwards**: This system does not house any documents related to River Oaks but contains general |

| | ledger data for the property. The Plaintiffs do not object to producing this data but, given the volume of data, the Plaintiffs suggest that the parties meet and confer to identify which categories of information the Defendants are seeking from JD Edwards, so as to avoid a "data dump" and minimize the burden on both sides.<br><br>• **eProperty Tax/OneSource**: The Plaintiffs have already collected and produced all documents housed in OneSource (the successor program to eProperty Tax) related to River Oaks.<br><br>• **DYNA**: Simon no longer uses or has access to DYNA, so there is no information to be produced from this system.<br><br>• **CTI**: This system does not house any documents related to River Oaks. With respect to data contained in CTI, the Plaintiffs have already produced data exports containing the following: (1) lease abstracts, (2) tenant sales data, and (3) all billings and credits for real estate taxes at River Oaks. To the extent the Defendants seek CTI data related to other charges, accounts receivable, and cash receipts, the production of such information is expected to be a time-consuming exercise. If the Defendants are still seeking data from CTI other than what has already been produced, the Plaintiffs suggest that the parties meet and confer to identify the categories of data so that the Plaintiffs can better understand the potential burden of collecting it.[1] |
| --- | --- |

---

[1] In the table attached to their October 1 letter, the Defendants expand upon CTI and state that "[l]ease and rent roll related materials map to RFP 71 (rent rolls), RFP 72 (lease agreements) and RFP 106–09 (lease abstracts and rent roll detail)." The Plaintiffs, however, have already produced copies of the leases at River Oaks from TAP, along with rent rolls.

| | |
|---|---|
| | • **ENGIE**: This system is maintained by a third party. Information related to River Oaks in this system is not accessible to Simon given the timeframe and would need to be requested from ENGIE. This system consists of copies of utility bills issued to Simon by third-party utility companies, as well as monthly totals of utility usage and costs. These documents are not responsive to any of the Defendants' document requests and, in any event, are irrelevant because this case is not about utility usage or costs. To the extent utility costs are relevant, these costs would already be encompassed in documents containing River Oaks expense information, which have already been produced. Given the burden and minimal responsiveness of this information, the Plaintiffs object to conducting a collection from ENGIE. <br><br>• **Intranet**: The Plaintiffs have already produced Simon's document retention policies from the Intranet. The Defendants have not requested any other policies in discovery, nor would such policies be relevant. Therefore, the Plaintiffs object to conducting any further search or collection from the Intranet. <br><br>• **Anaplan**: This system does not contain any data related to River Oaks. <br><br>• **SSLE**: This system does not contain any data related to River Oaks. <br><br>• **Capital Access**: Simon no longer uses this system, and there is no data related to River Oaks in this system. |
| 5. "Search additional departments (internal audit, IT/informational systems, specialty leasing, treasury) | The Plaintiffs object to conducting these searches as fishing expeditions. The Defendants say these departments "may" hold certain information, without any basis for that supposition. For example, the Defendants provide no basis for claiming that internal audit, IT/IS, or Specialty Leasing would have |

| | |
|---|---|
| that were omitted from plaintiffs' September 8, 2025 affidavit" | information related to River Oaks property taxes or valuations, let alone information not duplicative of what has already been searched for and produced. In fact, the Plaintiffs gave the Defendants the opportunity to identify additional custodians to be searched, and the Defendants did so by identifying 14 sources. The Plaintiffs agreed to conduct that search and have produced responsive documents. The Defendants should not be permitted to seek open-ended discovery on any and every potential custodian or issue. *See Fox v. Phillippe Builders, Inc.*, 2024 WL 3251597, at *3 (N.D. Ill. July 1, 2024) ("Discovery simply cannot go on endlessly until a [party] has everything it possibly could hope for or imagine" but instead "must have an end point." (quoting *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011))).<br><br>Additionally, with respect to the Defendants' request to "search" the IS department (it is unclear why the Defendants believe that IS would have valuation-related information), Simon's agreement to designate a Rule 30(b)(6) witness regarding document migrations and document retention is sufficient to address any information that IS may have. Although this would be purely "discovery on discovery" that Simon maintains is inappropriate, Simon is willing to agree to that deposition topic in a good-faith effort to resolve pending discovery disputes.<br><br>Lastly, the Defendants say "Specialty Leasing is in possession of tenant and lease information responsive to County defendants' RFP No. 71, 72 and 106–09 (rent rolls, lease abstracts) and communications about value under County defendants' RFP No. 129." The Plaintiffs have already produced leases from TAP, lease abstracts from CTI, and rent rolls—making any such discovery cumulative and duplicative. Further, communications by Specialty Leasing are not responsive to RFP No. 129, either in its original form (which seeks "[a]ny and all documents, electronic information or other materials |

| | |
|---|---|
| | sent to or received from a property manager") or in the narrowed form that the County Defendants agreed to during the parties' meet-and-confers (which seeks "asset management reports"). |
| 6. "Confirm in a supplemental affidavit signed by a representative of Simon Property Group that the plaintiffs have searched all new departments they represented as searched in their September 22, 2025 letter (e.g., development, property tax, legal, procurement, financial operations, property management, leasing and sub-units like cash receipts, accounts receivable, energy services, short-term leasing, long-term leasing) that are not mentioned in their affidavit" | The Plaintiffs object to this request. The Defendants admit that there is no RFP supporting this request, and the request is simply an attempt to obtain more "discovery on discovery." Simon has already provided a 14-page, detailed affidavit identifying all of the custodial and noncustodial sources searched, as instructed by the Special Master.<br><br>Additionally, the Defendants misstate both the language of the Plaintiffs' September 22 letter and the information that the Special Master instructed Simon to include in the Affidavit. Specifically, the Special Master instructed Simon to identify the departments associated with the custodial and noncustodial sources that were searched. Simon did so in the Affidavit. This does not mean that every custodial and noncustodial source associated with every such department was searched, nor would that be reasonable because "[d]iscovery is not an unrestricted process and is not designed to unearth every piece of potentially relevant evidence." *Lewis v. BNSF Ry. Co.*, 2019 WL 95153, at *2 (N.D. Ill. Jan. 3, 2019), *aff'd sub nom. Amen Ra v. BNSF Ry. Co.*, 795 F. App'x 463 (7th Cir. 2020). In other words, "[t]he Federal Rules of Civil Procedure do not require perfection or guarantee that every possible responsive document will be found and/or produced." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 124 (E.D. Mich. 2019); *see also Maenza v. Uchicago Argonne LLC*, 2019 WL 13276114, at *2 (N.D. Ill. May 15, 2019) ("Plaintiff's unfettered and unfocused request to search email accounts of 3,200 employees for possible reference to the Plaintiff is simply inconsistent with the proportionality balancing that Rule 26 requires. This is especially true as Defendant has already produced non-privileged emails of three patently relevant custodians as well as Plaintiff's own emails."); *Arconic Inc. v. Novelis* |

<table>
<tr><td></td><td><em>Inc.</em>, 2020 WL 9459169, at *6 (W.D. Pa. Feb. 14, 2020) ("There is no requirement that any party search the files of every single employee with relevant knowledge." (citing <em>Enslin v. Coca-Cola Co.</em>, 2016 WL 7013508, at *1 n.2 (E.D. Pa. May 13, 2016) (the party advancing the inclusion of additional custodians must "articulate [a] basis to believe that . . . they would be in possession of additional non-cumulative responsive information.")))<br><br>Also, the departments referenced in the Plaintiffs' September 22 letter are not "all new departments"; most of these had previously been referenced in the Affidavit. Further, the Affidavit identifies the M:Drive as a "Company-wide network drive," so while Cash Receipts, Accounts Receivable, and Energy Services were not searched specifically, they would have been encompassed in the M:Drive search for valuation documents. As for Short-Term Leasing and Long-Term Leasing, the Plaintiffs already explained in their September 22 letter that those are not their own departments but instead are part of Leasing, which is a department for which custodial and noncustodial sources were searched.</td></tr>
</table>

| 7. | "Search legacy "U: drive" and provide migration summary (what was transferred to OneSource and what was lost)" | While there is no longer any data contained in the U:Drive due to the migration to OneDrive, the Plaintiffs believe the explanation of the migration from the U:Drive to OneDrive (not "OneSource") can reasonably be addressed as part of the deposition topic discussed in response to Task No. 1 above. |
|---|---|---|
| 8. | (a) "Provide Bates numbers for all eProperty Tax (n/k/a OneSource) documents contained in plaintiffs' document production" | The Plaintiffs agree to do this by October 30, 2025. |

| | |
|---|---|
| 8. (b) "Provide crosswalk for eProperty Tax → OneSource (mapping and Bates ranges)" | The Plaintiffs do not understand what this request means or how it would differ from the information sought in 8(a). To the extent that the Defendants intend to seek a table of what elements from eProperty Tax mapped onto OneSource, the Defendants do not identify any elements they believe are missing, so there is no basis for such a request. |
| 9. "Produce all internal valuation materials, budgets and forecasts" | The Plaintiffs have already produced all of this information from the custodial and noncustodial sources that they collected. Contrary to the Defendants' statement in their October 1 letter, the Plaintiffs never "denied" that such information existed—indeed, the Plaintiffs produced many such materials before agreeing to conduct supplemental searches; they simply produced more of these materials in the recent productions based on their agreement to conduct expanded searches, which the Defendants are aware of. Also, the Defendants' contention on Page 10 of their October 1 letter that the *Plaintiffs* defined the term "asset management report" as used in RFP Nos. 124 and 129 is false. This was not Plaintiffs' "own definition"; that definition came from the *County Defendants*, as the Plaintiffs' written response to RFP No. 124 states: During the meet-and-confer on October 16, 2023, counsel for the County Defendants described an "asset management report" as an internal report that has income and operating expense information on it, as well as information about the cash flow of the property, and |

| | potentially updated information about the valuation of the property. The report could also discuss leasing information or vacancies on the property.<br><br>For the Defendants to claim that this was the Plaintiffs' definition, and then attempt to use that definition against the Plaintiffs, is concerning. During the meet-and-confer process, the Plaintiffs confirmed that Simon does not maintain reports called "asset management reports"; they never said that Simon does not maintain budgets or valuation documents, and indeed have produced many such documents, as the Defendants concede.<br><br>The Defendants now appear to be using their definition of "asset management report" as a catchall to demand any document relating to income, expenses, cash flows, valuations, leasing, or vacancy. Even though the Defendants never previously took that position, and thus the Plaintiffs never understood or agreed for "asset management reports" to be a catchall request, the Plaintiffs have produced thousands of such documents at this point, rendering the issue moot. |
|---|---|
| 10. "Confirm any attachments to privileged emails where the attachment was responsive to a RFP were produced and provide the Bates numbers" | The Plaintiffs object to this request pending a decision by the Special Master on the privilege log issues, and will be guided by that decision accordingly. |
| 11. "Provide a sworn supplemental affidavit from Simon | The Plaintiffs object to this request. The Defendants acknowledge that there is no RFP supporting the request, which is an attempt at further "discovery on |

| | |
|---|---|
| Property Group representative detailing custodians, systems and departments searched and search terms, including U: Drive, Lotus Notes, eProperty Tax, the retention and migration processes" | discovery." Simon has already provided the Affidavit, which identifies all of the custodial and noncustodial sources searched, as instructed by the Special Master. There is no basis for any supplemental affidavit or disclosure of search terms used. Additionally, as discussed above, Simon is already agreeing to designate a Rule 30(b)(6) witness on the issues related to document retention and migrations, which would address any questions regarding the "retention and migration processes." |
| 12. "Produce human resources and personnel files for Frank Lima and Lisa Clements" | The Plaintiffs object to this request. For one, the Defendants concede that there is no RFP supporting the request. Additionally, they do not identify any basis for believing that Mr. Lima or Ms. Clements's separations of employment from Simon have any relevance to the property taxes or valuation of River Oaks. Therefore, there is no basis to conduct any search for, review, or production of human resources or personnel files for Mr. Lima or Ms. Clements. |

The Plaintiffs believe that they have more than satisfied their obligations in discovery but agree to produce the additional information specified above in a good-faith effort to resolve any disputes and complete fact discovery.

Respectfully submitted,

/s/ *Samuel M. Ventresca*

Samuel M. Ventresca

cc:     All counsel of record