**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

A.F. MOORE & ASSOCIATES, INC.; J. EMIL
ANDERSON & SON, INC.; ERLING EIDE; and
FOX VALLEY/RIVER OAKS PARTNERSHIP,
and SIMON PROPERTY GROUP (Delaware), INC.

              Plaintiffs,

        v.

MARIA PAPPAS, Cook County Treasurer and Ex
Officio County Collector, FRITZ KAEGI, Cook
County Assessor, and the COUNTY OF COOK,

              Defendants.

No. 1:18-cv-04888

Judge John J. Tharp, Jr.

Judge Daniel P. McLaughlin

<u>**Minutes of Conferences with Special Master Grossman on**</u>
<u>**February 6, 2026, and February 9, 2026**</u>

<u>**Discussion of Plaintiffs' Agenda Items**</u>

- During the conference on February 6, 2026, prior to the Rule 30(b)(6) deposition of the Treasurer's Office, the parties discussed the Treasurer's Office's objections to certain of the topics in Plaintiffs' Rule 30(b)(6) Notice (Topic Nos. 10-12). The Treasurer's Office maintains that it objected to those topics because they all requested the Treasurer's Office's designee to be knowledgeable on topics that the Treasurer's Office contends it had no involvement in or knowledge about, including Topic No. 11, which asks about "knowledge, if any, of the systematic underassessment of properties located in Cook County." The parties' respective counsel discussed a possible stipulation on the disputed topics, with Plaintiffs' counsel noting the stipulations may be acceptable and that they raised this issue to determine what the Treasurer's Office does and does not know. Plaintiffs' counsel also noted that they intended to hold the deposition open pending agreement on the stipulations. Additionally, Plaintiffs agreed to withdraw Topic No. 13 in their Rule 30(b)(6) Notice related to the Treasurer's Office's relationship with Robert Gloudemans. During the conference on February 9, 2026, Plaintiffs agreed to send a list of the topics on which they were seeking stipulations to counsel for the Treasurer's Office, which would then provide proposed stipulations by February 18, 2026.

- The parties discussed claimed deficiencies in the Treasurer's amended privilege log. Plaintiffs explained that they require additional information to be provided, including identification of the individuals on the log who are attorneys. The Treasurer agreed to serve an amended privilege log by February 13, 2026, to identify the attorneys referenced on the log. The Treasurer further noted that certain entries involved a senior staff distribution list, which included additional attorneys. Plaintiffs reserved the right to keep the Rule 30(b)(6) deposition of the Treasurer's Office open pending the resolution of the privilege log issues.

1

- Cook County shall serve its supplemental response to Plaintiffs' Third Set of Interrogatories by February 13, 2026.

- Cook County shall complete its outstanding document production by February 10, 2026. Plaintiffs did not object to the County subsequently needing until February 13, 2026 to do so.

- Cook County shall serve its privilege log by February 13, 2026, which shall conform to the agreements reached by the parties with respect to the Treasurer's amended privilege log.

- Cook County shall serve its supplemental responses to Plaintiffs' document requests by February 13, 2026.

- Counsel for the Treasurer represented that, subject to the documents listed on its privilege log, any instances where there are materials being withheld subject to objections are reflected in the Treasurer's written responses and objections to Plaintiffs' document requests. Plaintiffs' position is that the Treasurer's responses to requests for production do not identify whether and which materials are being withheld subject to objections, and that the Treasurer must identify the documents or information being withheld subject to objections. Counsel for the Treasurer did not agree that was the scope of Judge Finnegan's ruling on this issue during the hearing held on September 30, 2022. Rather, it is the Treasurer's position that Judge Finnegan's ruling does not require specific identification of which materials are being withheld subject to objections, and only requires the parties to indicate whether any responsive documents or information are being withheld based on objections. Counsel for the Treasurer also asserted that Plaintiffs did the same in their responses to Defendants' requests for production. Counsel for the Treasurer asked that Plaintiffs' counsel review the transcript from that hearing and, if the transcript states that documents being withheld subject to objections must be so identified, that the Treasurer would do so. Plaintiffs' counsel agreed to review the transcript and advise accordingly.

## Discussion of Defendants' Agenda Items

- Following the Special Master's decision on the Bradley Braemer materials, Plaintiffs agreed to and did produce those materials by February 8, 2026.

- The parties discussed the issue of "Attorneys' Eyes Only" (AEO) designations on the 325 documents that Defendants requested in unredacted form. As reflected in the minutes from the conference held on January 20, 2026, the parties had competing positions on the AEO designations, and the Special Master ruled that the provisional status over the AEO documents would remain in place until the parties and the Special Master would be able to revisit the issue. During the conference on February 6, 2026, Plaintiffs explained their position that the non-Cook County properties should remain redacted and that the Cook County properties could be left unredacted but treated as AEO. Counsel for the County Defendants argued that the non-Cook County properties are relevant, primarily because Plaintiffs chose to file an Equal Protection claim. Plaintiffs responded that they believe

information about other properties was not previously requested, and that other properties (particularly those outside of Cook County) are not relevant to an Equal Protection claim because they need only prove disparate outcomes. The Special Master noted that the parties have a protective order in place and asked whether limited AEO silos were possible. Plaintiffs stated that a case-by-case AEO carveout might be possible and that the parties could continue to work through this issue cooperatively. Counsel for the County Defendants stated that he understands why Simon wants its company data protected but that Plaintiffs had not yet met their burden in establishing the need for AEO. The parties proposed that, if Plaintiffs can identify the active and pending cases, the parties can likely come to an agreement on this issue. Plaintiffs stated the pendency of a particular case is not the only reason that AEO protection is necessary. The Special Master instructed Plaintiffs to identify, at the next conference, the properties that are in active or potential litigation.

- The County Defendants stated that Plaintiffs' need to supplement their written responses to the County Defendants' requests for production to indicate whether Plaintiffs are withholding documents subject to objections. Plaintiffs explained that they identified the requests where they are withholding documents subject to objections via email, and that the responses to those requests already cover what Plaintiffs are obligated to state, and that for other requests, Plaintiffs are not obligated to affirmatively state that they are *not* withholding documents subject to objections. Plaintiffs agreed to review the transcript of the hearing held before Magistrate Judge Finnegan on September 30, 2022, and confirm their position to the County Defendants.

- Defendants asked that Plaintiffs provide an update on Plaintiffs' contacts with Ernst & Young ("EY") regarding the order from the Special Master that Plaintiffs were to contact EY to ask whether EY has any additional impairment memoranda and spreadsheets that Defendants claimed were missing from Plaintiffs' production, and EY's subpoena response. Plaintiffs' counsel stated that EY is looking into the issue, but that no updates were available as of yet. Counsel for the Assessor asked for clarification regarding the custodians that Plaintiffs searched to find impairment memoranda and spreadsheets. Plaintiffs explained that they have previously disclosed the list of custodians from whom they searched for documents,, and of those custodians, Plaintiffs' counsel stated that they believe there were two main people who communicated with EY – Adam Reuille and Steve Broadwater. Defendants asked if Plaintiffs searched the emails of Hether Wenger, who they indicate was a long-time employee in Simon's corporate financial reporting department that they claimed had frequently communicated with EY. Plaintiffs' counsel responded that her emails were not searched, and stated that Hether Wenger was not previously requested by Defendants despite Plaintiffs adding other custodians to their list at Defendants' request. The Special Master instructed Plaintiffs to ask Hether Wenger to search her Lotus Notes account from 2002 to 2017 for impairment memoranda and related spreadsheets. The Special Master did not require Plaintiffs to perform a formal collection and review of Ms. Wenger's entire custodial account. Additionally, the Special Master instructed Plaintiffs to follow up with EY for an update on the separate request that EY search for additional impairment memoranda and related spreadsheets.

- Defendants asked for the contact information of former Simon employee David Campbell because they wanted to speak to him by phone regarding his involvement with annual budget meeting materials. Plaintiffs explained that as a former employee, Plaintiffs' counsel may represent Mr. Campbell to the extent discovery were to be sought from him, but they could not confirm at the time whether they were in fact representing Mr. Campbell. Plaintiffs' counsel noted that while Illinois rules do not prevent the Defendants from communicating with a former employee, Plaintiffs objected to Defendants seeking a deposition from Mr. Campbell because it was over the 10-deposition limit and beyond the scope of the agreed Stipulation on remaining depositions (Dkt. 530). The Special Master stated that currently Mr. Campbell is a third party to this litigation and that Plaintiffs' counsel had until February 13, 2026, to determine whether they represent Mr. Campbell. At that time, Plaintiffs' counsel shall inform Defendants if they represent Mr. Campbell.

- Defendants asked that Plaintiffs produce the trial transcripts from the *Pleasant Prairie* case, which Defendants previously requested and Plaintiffs previously produced the transcripts of the deposition and trial testimony of Steve Broadwater and Michael Larson. The Special Master instructed Plaintiffs to determine whether they have the full set of trial transcripts from the *Pleasant Prairie* case and, if those transcripts are within Plaintiffs' possession, Plaintiffs is to produce them.

- Defendants asked about certain pages of a Guru Lease Activity Report that were not produced as part of Plaintiffs' production of the budget meeting materials. Plaintiffs explained that the other pages related to nonresponsive properties, but that they believed they had produced the full version of the Lease Activity Report elsewhere. Plaintiffs stated they would send to Defendants the Bates number of the full document with redactions.

- Defendants went through a list of items they requested from Plaintiffs in a letter dated January 28, 2026, which Defendant sent after Juan Paz's deposition on January 23, 2026.

  o First, Defendants asked that Plaintiffs produce all "portfolio budget plans," which Mr. Paz testified were prepared on an annual basis. There is only one "portfolio budget plan" relating to River Oaks in Plaintiffs' production. The Special Master denied this request.

  o Second, Defendants requested that Plaintiffs produce forecast data from the OPT system for 2010-2014 based on Mr. Paz's deposition testimony. During this discussion, the parties and the Special Master reviewed the transcript of Mr. Paz's deposition, and the parties took differing positions as to Mr. Paz's testimony regarding the availability of forecasting data from 2010 to 2014. The Special Master instructed Plaintiffs to clarify with Mr. Paz his testimony regarding the availability of forecast data for 2010-2014.

  o Third, Defendants requested the production of all "Value Comparison Reports." Plaintiffs explained that they had produced these documents already. Defendants asked that Plaintiffs provide the Bates numbers of the Value Comparison Reports relating to tax years 2005-2010, and Plaintiffs agreed to do so.

- Fourth, Defendants requested that Plaintiffs produce any valuations related to the theater at River Oaks. Defendants argued that Mr. Paz put the value of the theater (which sits on a parcel not at issue in the litigation) at issue by claiming that certain documents relating to the value of River Oaks included the theater parcel. The Special Master decided that, while she would not order Plaintiffs to conduct a new search for and production of documents, if Defendants show Mr. Paz a valuation-related document at his upcoming Rule 30(b)(6) deposition scheduled for February 17, 2026, Mr. Paz should be able to answer whether that valuation includes the theater. Plaintiffs stated that while they would not prepare Mr. Paz to testify to specific values of the theater, he may be able to testify to a range of values for the theater. Defendants stated that Plaintiffs would like to know the range of values of the theater for tax years 2005 through 2014, excluding 2007 and 2013. The Special Master stated that if Defendants have particular documents for which they have a question as to whether the theater is included or not, they should identify those documents for Plaintiffs in advance of Mr. Paz's upcoming Rule 30(b)(6) deposition.

- Fifth, Defendants requested "[a]ll of Simon Property Group's lists or reports of underassessed and overassessed properties from 2002 to 2017," and referred to a 2009 document produced at RIVEROAKS_00064267. Plaintiffs stated that other than the 2009 document, they had not located any other such lists in their searches. Plaintiffs' counsel explained that they believed their searches would have hit on any other lists or reports of underassessed and overassessed properties where River Oaks was mentioned, and that if River Oaks were on any such lists, those would have been produced. The Special Master stated that the minutes would reflect that no such other documents were located based on Plaintiffs' searches.

- Defendants requested that Plaintiffs produce materials relating to the listing and sale of River Oaks, including purchase offers. Defendants stated that they had seen documentation relating to a meeting between Simon and the Assessor's Office in the 2007-2008 timeframe where it appeared that Simon was considering selling River Oaks, and that Defendants had not seen any other documents about this. Plaintiffs stated that they had conducted a reasonable search for those documents but had not found anything additional beyond what they had already produced.

- With respect to Plaintiffs' offsite storage of boxes at GRM, Defendants asked about the status of the 10 boxes they had selected for searching. Plaintiffs stated that they had not received confirmation as to whether the 10 boxes initially identified by Defendants were their final selection. Defendants stated that their list of 10 boxes was their final list, and Plaintiffs stated that they would pull those boxes as soon as possible and would provide a status update by February 13, 2026.

- Defendants asked whether Plaintiffs had performed a search of the email address titled "propertytax@simon.com." Plaintiffs responded that, as they had previously advised Defendants, this email address is not a custodial account capable of being collected and searched, but instead, was a distribution list.

- With respect to the parties' briefing on Michael Dart's Rule 30(b)(6) deposition, the Special Master scheduled a hearing for February 16, 2026, at 4:30 p.m. Eastern/3:30 p.m. Central.

**Parties' Next Conference with the Special Master.** The parties and the Special Master will reconvene for a discovery conference via Zoom on February 27, 2026, at 9:30 a.m. Eastern/8:30 a.m. Central.