## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

A.F. MOORE & ASSOCIATES, INC.; J. EMIL ANDERSON & SON, INC.; ERLING EIDE; and FOX VALLEY/RIVER OAKS PARTNERSHIP, and SIMON PROPERTY GROUP (Delaware), INC.

Plaintiffs,

v.

MARIA PAPPAS, Cook County Treasurer and Ex Officio County Collector, FRITZ KAEGI, Cook County Assessor, and the COUNTY OF COOK,

Defendants.

No. 1:18-cv-04888

Judge John J. Tharp, Jr.

Judge Daniel P. McLaughlin

### Combined Minutes of April 3, 2026 and April 8, 2026 Conferences with Special Master Grossman

### <u>Discussion of Defendants' Agenda Items</u>

- On February 20, 2026, Defendants issued a document subpoena to Eastdil Secured, LLC, a broker retained by Simon Property in 2011, to market River Oaks for potential sale. On March 27, 2026, Defendants received 7,927 pages of documents and spreadsheets from Eastdil relating to River Oaks in response to the subpoena, the majority of which, they argue, had not previously been produced by Plaintiffs.

  - o Defendants maintain that Eastdil's production contained documents responsive to Defendants' prior requests for production, including letters of intent to purchase River Oaks from Carlyle Development Group, Mountain Acquisitions, LLC, and Thor Properties LLC.

  - o Defendants maintain that Eastdil's production also included periodic status reports and memoranda regarding potential offers Eastdil received for the property, identification of 31 companies that entered into confidentiality agreements with Eastdil related to this engagement, an offering memorandum, investor lists, and a 2011 letter of engagement between Simon Property and Eastdil.

- Defendants' counsel explained that their February, 2021 document requests explicitly sought River Oaks materials related to commercial valuations, marketing materials, sales offers, letters of intent, brokers, consultants, engagement letters and other materials that are contained in the Eastdil subpoena response.[1] Plaintiffs had previously provided written discovery responses indicating that River Oaks was never listed for sale and that there were no brokers, purchase offers, or letters of intent for River Oaks. (*See, e.g.*, Plaintiffs'

---

[1] Relevant requests included County Defendants' Requests Nos. 67, 82, 90, 113, and 121.

response to Request No. 82 and Plaintiffs' answer to County Defendants' Interrogatory No. 3).

- During the conference, Plaintiffs' counsel explained that Plaintiffs responded in such a manner because, at the time, their good-faith understanding was that the property had not been listed for sale. Counsel stated that that understanding changed in December 2025, when Simon located documents related to Eastdil's marketing efforts.[2]

- Defendants' counsel responded that, in September 2025, Plaintiffs produced a single spreadsheet, which was largely redacted, that referenced potential sales offers. Then, on December 2, 2025, Plaintiffs told Defendants that they had pulled seven boxes of materials from offsite storage, containing materials they believed were duplicative of information already produced, or not covered by Defendants' requests at all, but that Plaintiffs would make the documents available to Defendants for inspection. Defendants requested that Plaintiffs produce those documents anyway, but Plaintiffs' counsel responded that because these were maintained as hard copies rather than electronically, they were only offering Defendants the opportunity to inspect and copy these documents. Defendants collected the boxes on December 3, 2025, scanned the hard-copy materials themselves, and then provided those scans to Plaintiffs for Bates-stamping. On December 30, 2025, Plaintiffs produced Bates-stamped versions of the 1,930 documents (16,600 pages), which included documents related to the engagement of Eastdil.

- Defendants further explained that on January 9, 2026, Plaintiffs proposed stipulations to address some of Defendants' Rule 30(b)(6) topics. One such topic requested information concerning any and all sales and offers for sale, to which Plaintiffs represented to Defendants that they were not aware of any written offers to purchase or sell River Oaks between 2003 and 2014. In late February 2026, multiple Simon Property employees testified in depositions that they were not aware of any offers to purchase or sell River Oaks during the tax years at issue.

- Defendants' position is that Plaintiffs' repeated representations that there were no offers to purchase or sell River Oaks led Defendants to believe that no such offers existed. However, in mid-February 2026, Defendants reviewed the Eastdil documents contained within the December 30, 2025 production and discovered contradictory information.

- Defendants further stated that the December 30, 2025 production contained letters from Simon Property employees to survey companies that state River Oaks was being marketed

---

[2] During the preparation of these minutes, the parties engaged in an extensive back-and-forth about the details regarding who knew what when, and what had been stated during the hearing with the Special Master. Defendants assert that the relevant facts are that (i) Simon Property's Rule 30(b)(6) witness Michael Dart testified that Simon Property reviewed the Eastdil valuation documents in November 2025, (ii) a Blank Rome attorney (Mr. Schrag) had summarized and characterized those documents as "duplicative" in an email to Defendants in early December 2025, (iii) Simon Property stipulated to facts that were contrary to what the Eastdil documents showed on January 9, 2026, and (iv) Simon Property knew about the offers of sale in December 2025, as confirmed by the fact that at the hearing with the Special Master, Simon's counsel argued that Defendants were not timely in raising the issue of the Eastdil documents. Simon's counsel does not dispute that Plaintiffs produced the Eastdil documents in December 2025 but stated that he (Mr. Ventresca) did not personally learn about the Eastdil documents until February 2026 and therefore had not made any false representations. For present purposes, the Special Master accepts that Simon Property was aware of the Eastdil documents in at least December 2025.

for sale in 2007, and that Plaintiffs have not produced any other information relating to efforts to sell the property in 2007. Defendants asked Plaintiffs' counsel if they knew about the brokers Simon Property used to market River Oaks in 2007 or purchase offers they had received, and Plaintiffs' counsel did not know that information.

- Defendants explained that after having the opportunity to conduct an assessment of the Eastdil documents, they prepared a document subpoena to Eastdil. The subpoena was timely issued on February 20, 2026, prior to the close of fact discovery.

- Defendants argued that Plaintiffs' refusal to provide sales materials unfairly prejudiced them from fully pursuing discovery on this key topic and requested three sets of additional discovery:

  o (1) leave to issue document subpoenas to the 31 entities that appeared to have signed confidentiality agreements with Eastdil in 2011;

  o (2) an order for Plaintiffs to conduct a supplemental search for documents relating to efforts to market River Oaks for sale, including documentation relating to the deliberation about any offers Eastdil received for River Oaks and Simon's decision to accept or reject those offers, (including a search of the emails of Simon employees who may have communicated about a potential sale of River Oaks, including Andrew Juster, John Albright, Christy Lewis, Melissa Breeden, Donna Vosper, Kathleen Ray, Brian McDade, and Brian Warnock); and

  o (3) an order for a supplemental deposition of Plaintiffs pursuant to Rule 30(b)(6) relating to efforts to market River Oaks for sale.

- Defendants asked that an independent forensic examiner conduct the requested supplemental searches, citing the parties' repeated discovery disputes and Plaintiffs' inaccurate representations in written discovery.

- With respect to the first item, the Special Master stated that while she was inclined to grant the request, she would like to discuss the issue with the Court and, if she could not quickly reach the Court, she would rule on the issue herself. On April 4, 2026, the Special Master granted defendants' request for leave to issue subpoenas to the companies that appeared to have signed confidentiality agreements with Eastdil in 2011.

- Before ruling on the other two requests, the Special Master asked Plaintiffs to provide their positions on Defendants' following requests:

  o Whether they would be willing to designate a live Rule 30(b)(6) witness to testify to topics relating to the potential sale of and offers for River Oaks;

  o Whether they would be willing to produce their internal documentation and deliberation about the offers Eastdil received for River Oaks and Simon Property's decision to accept or reject those offers;

  o Whether they would be willing to search the emails of Simon Property employees who may have communicated about the sale of River Oaks, including Andrew Juster, John Albright, Christy Lewis, Melissa Breeden, Donna Vosper, Kathleen Ray, Brian McDade and Brian Warnock; and

- o Whether they would agree to allow an independent forensic investigator to conduct the aforementioned searches. Defendants cited the months-long disputes over the adequacy of Plaintiffs' searches, and Plaintiffs' inaccurate representations in written discovery, stipulations, and depositions, as an indication why a third party should perform the searches.

- With respect to the second and third items, Plaintiffs' counsel objected to Defendants' request for an independent forensic examiner to perform the supplemental searches and requested an opportunity to discuss the remaining items with Simon. Plaintiffs' counsel agreed to provide the Special Master and Defendants with Plaintiffs' position on these issues by April 7, 2026.

- On April 7, 2026, Plaintiffs sent an email stating that they would agree to the following:

  > 1. Simon would conduct a reasonable search for documents related to attempts by Eastdil Secured, CBRE, or HFF to market and/or sell the River Oaks property, including the deliberation of any offers. Simon would agree to search for documents from the custodians identified by Defendants: John Albright, Andrew Juster, Christy Lewis, Melissa Breeden, Donna Vosper, Brian McDade, Brian Warnock, and Kathleen Ray. Simon would endeavor to complete the search, review, and any document production by April 30, 2026.

  > 2. Following the completion of any supplemental document production, Simon would prepare and designate a Rule 30(b)(6) witness to testify about the engagement of Eastdil Secured, CBRE, and HFF to market and/or sell the River Oaks property, as well as any offers received, to the extent that information is reasonably available from current employees, former employees, and/or documents.

  > 3. Plaintiffs' offer was subject to the following: (1) Defendants agreement to withdraw any issues raised in response to Simon's other Rule 30(b)(6) witnesses (Plaintiffs' understanding is that the only outstanding issue was the question of designating testimony from Brian Warnock in lieu of or in addition to Jodi Calisto's 30(b)(6) testimony regarding the spinoff to Washington Prime Group); and (2) Defendants agreement not to file any spoliation- or sanctions-related motions prior to the completion of the above discovery.

***

- The parties reconvened with the Special Master on April 8, 2026.

- First, with respect to the supplemental document search, Defendants responded that Plaintiffs' proposed search was too narrow because it did not account for a search for materials relating to marketing of River Oaks for sale in 2007. The Special Master agreed that the search should encompass any marketing and sale efforts for years 2002 through 2017, including the internal deliberation concerning any offers. Defendants agreed to Plaintiffs' proposed production deadline of April 30, 2026.

4

- o The Special Master denied Defendants' request for a forensic examiner to conduct the search and stated that Blank Rome would supervise and be held jointly responsible (with Simon) for the search. The Special Master notified Blank Rome that, if the parties were unable to reach agreement, she would review proposed search terms, hit reports, and noncustodial sources. The Special Master reiterated her expectation that the search and production process be closely supervised by counsel from Blank Rome. She did not foreclose the future use of a forensic examiner should issues arise concerning the accuracy and completeness of the search.

  - o The parties agreed that by April 13, 2026, Plaintiffs will provide Defendants with proposed search terms, as well as the departmental drives and/or other noncustodial searches that they propose to conduct.

  - o By April 15, 2026, Defendants will review the proposed search terms and sources and will suggest any adjustments for Plaintiffs' consideration. The parties will meet and confer and endeavor to agree on search terms and noncustodial sources. If they cannot reach agreement, the Special Master will decide the final search terms and noncustodial sources to be searched.

- Plaintiffs agreed to prepare and designate a Rule 30(b)(6) witness to testify about Simon Property's and brokers' efforts to market and/or sell River Oaks, as well as any offers received and the internal deliberations about those offers and the potential sale. The parties agreed that Rule 30(b)(6) deposition would not just be limited to Simon Property and brokers' efforts in 2007 and 2011 to market or sell River Oaks. Rather, Plaintiffs' designated witness will be prepared to testify as Simon Property's representative for the years 2002 through 2017.

- Third, Defendants did not agree to withdraw their contention about the adequacy of Jodi Calisto's Rule 30(b)(6) testimony regarding the spinoff of River Oaks to Washington Prime Group, as it is not relevant to the present dispute.

- Finally, Defendants agreed to hold off on filing any sanctions- or spoliation-related motions until the completion of the above-described supplemental search, production, and Rule 30(b)(6) deposition.

- During both of the conferences, the Special Master stated, and the parties agreed that the expert discovery deadlines would not be moved.

The parties agreed to reconvene for another conference on this matter on Tuesday, April 21, 2026, at 8:00 a.m. CT / 9:00 a.m. ET, to the extent necessary if the parties are not able to agree on search terms and noncustodial sources.